(July 11, 1905.)

## STATE v. DOLAN.

[81 Pac. 640.]

CRIMINAL LAW—THE SALE OF FISH—PRIVATE PONDS.

    1. Under the provisions of section 3 of an act commonly known as the fish and game law (Sess. Laws 1905, p. 258), a person or corporation may establish a private pond to propagate fish in water on premises of his own, where food fishes do not naturally abound, and may propagate and grow fish therein as provided by said section, and may sell the same himself directly to the consumer.

    2. Under the provisions of said act, it is made a misdemeanor for any person or persons not the owner of such pond to sell or offer for sale any fish protected by said act.

    3. Under the provisions of said act, it is made a misdemeanor for any person or persons, railway, express company, stage line, or other common carrier, or any of their agents or employees to transport or receive, or to have in his, its or their possession any species of fish protected by said act, for the purpose of transporting the same or for the purpose of offering or permitting the same to be offered for sale.

    4. Under the stipulated facts, the ponds from whence the fish in question were taken are not private ponds within the meaning of the provisions of said section 3.

(Syllabus by the court.)

APPEAL from the District Court of Ada County. Honorable Frank J. Smith, Judge.

Defendant was convicted of offering for sale or selling species of fish known as trout. Judgment affirmed.

Hawley, Puckett & Hawley, for Appellant, cite no authorities.

J. J. Guheen, Attorney General, Edwin A. Snow and F. S. Wettach, for the State.

In *State v. Farrell*, 23 Mo. App. 176, it is decided that "A statute prohibiting the killing or having in possession of certain game within a given period of time is violated by hav-

ing such game in possession within the prohibited period, irrespective of the time and place of their killing." To the same effect are *State v. Judy,* 7 Mo. App. 524; *State v. Randolph,* 1 Mo. App. 17; *State v. Randolph,* 3 Cent. L. J. 187; *Phelps v. Racey,* 60 N. Y. 10, 19 Am. Rep. 140. The question came before the high court of justice in England, presided over by Lord Coleridge, in the case of *Whitehead v. Smithers,* 2 C. P. Div. 553, 21 Moak (Eng. Rep.), 548. It was provided by section 2 of an act (39 & 40 Vict., c. 29) that any person who shall have in his control or possession any wild fowl recently killed, wounded or taken between the 15th of February and the 10th of July in any year shall, on conviction, forfeit and pay for every such wild fowl so killed, wounded or taken or so in his possession, not exceeding one pound, with costs of conviction. The defendant had purchased the birds, which had been killed in Holland, and consigned to and received by Mr. Howard, a poulterer, and it was claimed for defendant that the statute did not apply to birds killed in Holland and imported into the United Kingdom. Lord Coleridge said: "I am of the opinion that that argument is not well founded. It is said that it would be a strong thing for the legislature of the United Kingdom to interfere with the rights of foreigners to kill foreign birds. But it may well be that the true and only mode of protecting British wild fowl from indiscriminate slaughter, as well as protecting other British interests, is by interfering indirectly with the proceedings of foreign persons. The object is to prevent British wild fowl from being improperly killed and sold under pretense of their being imported from abroad." (*Magner v. People,* 97 Ill. 320; *Estate v. Schuman,* 36 Or. 16, 78 Am. St. Rep. 754, 58 Pac. 661, 47 L. R. A. 153.) There is no open season reserved, and no saving clause under which trout may be sold, and the statute being mandatory in character, and not susceptible of two constructions, but certain and unambiguous in its terms, it applies with as much force to trout shipped into this state and becoming a part of its general property as to those caught within its limits. (*Ex*

*parte Maier,* 103 Cal. 476, 42 Am. St. Rep. 129, 37 Pac. 402;
*Commonwealth v. Savage,* 155 Mass. 278, 29 N. E. 468; *People v. Haagen,* 139 Cal. 115, 72 Pac. 836; *State v. Beal,* 75
Me. 289; *Commonwealth v. Gilbert,* 160 Mass. 157, 35 N. E.
454, 22 L. R. A. 439.)

SULLIVAN, J.—The appellant was convicted of the crime
of offering for sale and selling certain fish protected by the
laws of the state of Idaho, to wit, trout. The trial before
the district court was without a jury, upon an agreed state-
ment of facts. The defendant was found guilty and sentenced
to pay a fine of $10 and costs. The appeal is from the judg-
ment. The general assignment of error is that the decision
of the court is against the law and contrary to the agreed
statement of facts, which constitute all of the evidence in the
case. The agreed statement of facts is as follows:

"It is hereby stipulated and agreed by and between coun-
sel for the respective parties hereto that the facts in this case,
and upon which the judgment and decision of this court
are desired, are as follows, to wit: That on the fifteenth day
of May, 1905, at Boise, in the county of Ada, state of Idaho,
the defendant, W. F. Dolan, had in his possession for the pur-
pose of selling, and did expose, offer and sell certain fish, to
wit, trout. That prior to said fifteenth day of May aforesaid,
said trout were shipped by express to this defendant at his
special instance and request by one Robert Osborn of Fre-
mont county Idaho. That said Osborn is the owner of
artificial ponds or lakes on premises owned by him, situated
near Island Park, Fremont county, Idaho, the same having
been constructed and in use prior to January 1, 1905, in
which he propagates and raises trout; and said trout so sold
were the original product of the water contained in said ponds
or lakes, and neither said fish nor the spawn were taken from
any of the lakes or streams of this state, but said fish so ex-
posed, offered for sale and sold by this defendant as afore-
said were each and all of them propagated and grown in said
private ponds or lakes of said Robert Osborn. That the map

hereto attached marked Plaintiff's Exhibit "A," and made a part hereof, is approximately correct as to the location of said ponds or lakes with reference to certain natural streams and rivers. That one of said ponds or lakes is constructed upon a small stream (marked "1" and "2" on map), which flows into the north fork of Snake river, said stream being about eight (8) miles long; and said pond or lake is constructed about one mile from the mouth of said stream where the same flows into the north fork of Snake river. Circle No. three (3) upon said map represents such pond or lake. Line No. four (4) represents a ditch constructed by said Osborn from said pond for about one-half mile and which changes the course of waters of said stream "1" and "2" and empties the same into a spring creek (No. five (5) on map), said spring creek being about forty (40) rods long and emptying into said north fork of Snake river, said spring creek being fed by a spring (No. six (6) on map). That said spring creek does not freeze in winter; that said Osborn has constructed a dam about two hundred (200) feet from the mouth of said spring creek and has constructed a lumber trap in said creek (marked No. seven (7) on map), the purpose of which is to prevent the fish raised in said ponds from getting into Snake river. That one of said ponds or lakes for raising and propagating fish is situated upon said spring creek above said dam, and is marked No. 13 on map. Line eight (8) on said map represents the north fork of Snake river. Lines nine, ten and eleven (9, 10, 11) represent small streams close by, emptying into said Snake river. That all of said small streams, including the stream upon which said Osborn has constructed said ponds or lakes, are natural spawning grounds for trout and other fish, and contain at all times trout and food fishes, as such streams very seldom get roily during the high water and during the spawning season of such fish. That the area of each of the ponds or lakes so constructed and owned by said Osborn does not exceed five (5) acres."

Counsel for the appellant contend that the law does not prohibit the sale of trout which are the original product of

a private pond; that under the provisions of section 3 of the fish and game laws (Laws 1905, p. 259), fish, the product of a private pond, are excepted from the penalties attached to the sale of fish protected by the law, and for that reason the defendant is not guilty. Section 3 is as follows: "Any person, association or corporation may establish, maintain, or own, a private park, lake or stream for fish or game or both, on premises owned by him or it respectively, and to that end may employ means to preserve and propagate such fish and game, and it shall be a misdemeanor to trespass thereon; provided, that no private park shall be established under the provisions of this act so as to contain any lands or water where food fishes naturally abound, and shall not be construed so as to permit any person or persons to barter or sell at any time of the year any fish not the original product of the waters contained in said pond. And it shall be a misdemeanor to take the fish or spawn from any of the lakes or streams of this state and place them in private parks or ponds at any time of the year, and it shall also be a misdemeanor for any person or persons to sell or offer for sale any fish not propagated or grown in a private park or pond."

It is admitted by counsel for the state that if said section contained the only provision in the law relative to the sale of fish, there might at least be some ground for the appellant's contention, and also contend that the law referred to contains other provisions in connection with which said section 3 must be construed. Section 4 of said act provides, among other things, as follows: "It shall be unlawful for any person to catch more than twenty pounds of trout, bass, catfish, grayling or sunfish, in any one day, or have in their possession more than thirty pounds at any time." And section 9 of said act provides, among other things, as follows: "It shall be unlawful for any person or persons, company or corporation, or the agent or employee of such company or corporation to sell, offer or expose for sale, or have in his, its or their possession, for the purpose of selling or offering for sale, any species of fish or birds protected by this act, or any part

of a carcass of any of the animals mentioned in this act at any time of the year. Any such person or persons, company or corporation, agent or employee having in his, its or their possession any of the animals or fish herein mentioned for the purpose of selling the same shall be guilty of a misdemeanor.'' And section 10 is as follows: ''It shall be unlawful for any person or persons, railway, express company, stage line or other common carrier, or any of their agents, or employees to transport, or to receive or to have in his, its or their possession any of the game, animals or birds in this act mentioned, or any species of fish protected by this act for the purpose of transporting the same out of this state or from any point in this state to any other point for the purpose of offering or permitting the same to be offered for sale: provided, that nothing in this act shall be construed to prevent shipping or transporting mounted heads or stuffed birds or animals to any point within the state when such birds or animals were not taken or killed in violation with the provisions of this act.''

The evident object and purpose of the said law was to protect certain species of fish therein named, and it is apparent from the following provisions of said section 3 (to wit, ''and shall not be construed so as to permit any person or persons to barter or sell at any time of the year any fish not the original product of the waters contained in said pond''), that the owner of such a private pond as therein specified and such fish raised as therein specified, that the owner thereof might sell such fish, but under the other provisions of said act quoted, no person not owning such private pond could legally barter or sell at any time any of such fish, nor could any person or persons, company or corporation, or the agent or employee of such company or corporation, lawfully sell, offer or expose for sale, or have in his, its or their possession for the purpose of selling or offering for sale any of the species of fish protected by said act. That construction goes to the very limit, and those provisions construed with other provisions of said act could reasonably be construed to prohibit the sale

of fish raised in private ponds. But under the first construction the owner only of such private pond can lawfully sell the fish raised in his private pond as prescribed in the provisions of said section. The private pond referred to in said section 3 must be on premises owned by such person or corporation respectively, and such private pond must not be established so as to contain any water where food fishes naturally abound. That being true, private ponds can only be established in waters where such food fishes do not naturally abound.

A map or plat is attached to the stipulated facts and marked exhibit "A" and made a part thereof, and it is agreed that said plat is approximately correct as to the location of the ponds or lakes from whence the fish in question were taken, with reference to certain natural streams and river. After describing particularly said ponds and streams, it is stipulated as follows: "That all of said small streams, including the stream upon which Osborn has constructed said ponds or lakes, are natural spawning ground for trout and other fishes, and contain at all times trout and food fishes, as such streams very seldom get roily during the high water and during the spawning season of such fish."

That stipulation shows clearly that the pretended private pond or ponds from which the fish in question were taken does not come within the meaning of the term private pond, as used in said section 3. In that section one is prohibited from establishing a private pond on water where food fishes naturally abound. Under said stipulations, it is agreed that the ponds from whence said fish were taken are natural spawning grounds for trout and other food fishes. So under the law said pretended private ponds are not private ponds within the provisions of said section.

Opinion of the Court—Sullivan, J.

Such pretended private ponds are only devices for the evasion of the said law, and are not private ponds within the meaning of the provisions of said section.

The judgment of the court below must be affirmed.

Ailshie, J., concurs.

Stockslager, C. J., concurs in the conclusion reached.