## INHABITANTS OF PERU AND DIXFIELD

### *vs.*

## PETER G. BARRETT AND IRVING C. KIDDER.

### Oxford.    Opinion May 8, 1905.

*Pleading.   Ferries.   Transportation for Hire.   Interference with Ferry Franchise.  
Remedy.   Statutes.   Evidence.   R. S. (1883), c. 20, §§ 2, 6.  
(R. S. c. 25, §§ 2, 6.)*

The only proprietorship in a ferry in this state is the franchise conferred by statute, and the person holding it has no common law remedy against those who interfere with his profits, but the remedy is by sec. 6, chap. 20, R. S. 1883.

In a civil action it is not necessary to set out a statute or to make any reference to it in the declaration; it is sufficient if the case is brought within its provisions by alleging the requisite facts.

Where a town provides a person to be licensed to keep a ferry and pays the expenses beyond the amount of tolls received for maintaining it, it is entitled to the tolls and profits of the ferriage and has a right of action against those interfering with the business.

Any person has a right to keep and use boats for his own accommodation in passing over a river, or transporting his family, servants, and goods, and to occasionally carry over strangers within the line of travel implied in the location of an established ferry, because it would not be public carrying for hire; but he has no right to transport passengers and goods for hire so as clearly to. diminish the profits of the ferry, the criterion being the interference with the ferry franchise causing a natural, appreciable loss of patronage.

Where a merchant controls land on both sides of a river near the location of a ferry and has a store on one side and a warehouse on the opposite side of the river, and keeps two rowboats by which he transports his customers and their purchases without charge, there being no public crossings, except the ferry, nearer than a bridge three and one half miles above and another seven miles below the ferry, and this privilege was known to those trading with him and was an inducement intended to increase and did increase his business and diminished the profits of the ferry, *held*, that this was in effect a transportation of persons and property for hire, and that he is liable to the holder of the ferry franchise for interfering with his profits.

On report. Judgment for plaintiffs.

Action on the case under the provisions of section 6 of chapter 20 of the Revised Statutes of 1883—now section 6 of chapter 25 of the Revised Statutes of 1903—brought by the plaintiff towns as proprietors of a ferry across the Androscoggin River at Peru Center, Oxford County, against the defendants to recover damages caused by the interference of the defendants with the rights of the plaintiff towns in ferrying passengers and property.

After the evidence had all been taken out, it was agreed to report the same to the Law Court with the stipulation that "upon so much of the evidence as is legally admissible the Law Court is to render such judgment as the rights of the parties require. If the plaintiffs are entitled to recover, damages to be assessed at nisi prius."

The case is sufficiently stated in the opinion.

*John P. Swasey and John S. Harlow,* for plaintiffs.

*George D. Bisbee and Ralph T. Parker,* for defendants.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

PEABODY, J. This is an action on the case brought by the plaintiff towns as proprietors of a ferry across the Androscoggin river at Peru Center in Oxford County, Maine, against the defendants for damages caused by interference with their rights in ferrying passengers and property.

The case comes before the law court on report.

The ferry was legally established prior to the date of the alleged wrongful acts of the defendants, and the plaintiffs were charged with the duty of its maintenance in accordance with the provisions of chap. 20, sec. 2, R. S. (1883), which is as follows, "Sec. 2. They, (County Commissioners), may establish ferries at such times and places as are necessary, and fix their tolls. When no person is found to keep them therefor, the towns in which they are established shall provide a person to be licensed to keep them, and shall pay the expenses, beyond the amount of tolls received, for maintaining them. When established between towns, they shall be maintained by them

in such proportions as the commissioners order. For each month's neglect to maintain such ferry or its proportions thereof, the town forfeits forty dollars."

The defendants contend that the declaration neither sets out sufficiently a statutory or common law cause of. action. The only proprietorship in a ferry in Maine is the franchise conferred by statute, and the party holding it has no common law remedy against those, who, without right, interfere with his profits but the remedy is by sec. 6, chap. 20, R. S. (1883). The right of the plaintiff towns to receive the compensation fixed for ferriage is incident to the obligation imposed upon them by law to maintain the ferry, and the statute protects them against wrongful interference. *Day et al.,* v. *Stetson,* 8 Maine, 365; *Blisset* v. *Hart,* Willes, 508. The declaration is sufficient to present a case by statute. It is not necessary in a civil action to set out the statute or to make any reference to it in the declaration, but the case must be brought within its provisions by alleging the requisite facts. 1 Chitty on Pleading, (16 Am. Ed.) 237; Gould's Pleadings, 111, sec. 16, note 3; 20 Enc. Pl. Pr. 594-595; *Griswold* v. *Gallup,* 22 Conn. 207; *Chicago, etc., R. Co.* v. *Porter,* 72 Ia. 426; *Hayes* v. *West Bay City,* 91 Mich. 418; *Bogardus* v. *Trinity Church,* 4 Paige, (N. Y.) 178; *Kennayde* v. *Pacific R. Co.,* 45 Mo. 255.

While the obligation rests upon the plaintiffs to maintain the ferry so as to make it convenient for the public, they were only required to act when no person was found to keep the ferry for the established tolls. They were then obliged to provide a person to be licensed to keep it and to pay the expenses beyond the amount of tolls received for maintaining it. It was necessary that the ferry keeper should be licensed and give bond to the state for the protection of passengers over the ferry, whether the licensee was appointed by the County Commissioners or provided by the towns to be licensed when no person was found to keep the ferry for the tolls. When the towns provide a person to keep the ferry they are entitled to the tolls and profits of the ferriage and have a right of action against those interfering with them. It is unnecessary to allege in the declaration the action of the town in providing the ferry keeper or that the keeper was licensed and gave bond as required by law. It is presumed that all

things have been correctly done by the plaintiffs to entitle them to a right of action. If any prerequisites have been omitted the defendants may raise the question in defense. It appears from the report that the defendants for four years prior to May, 1902, were operating the ferry under an arrangement made with the selectmen of the two towns, and that since this arrangement ceased the ferry has been operated under the direction of the municipal officers.

The liability of the defendants depends upon the character of their acts in respect to the plaintiffs' ferry. They deny that they kept a ferry contrary to secs. 1 and 2 of chap. 20, R. S. (1883), or transported passengers or property across any licensed or established ferry for hire, or furnished for hire a boat or other craft for such purpose, and they claim that whatever construction may be put upon their acts as being within the definition of keeping a ferry, they did not interfere with the franchise of the plaintiffs. They were merchants and kept a country store in Peru on the Androscoggin river, near the ferry in question, and had a storehouse on the opposite side of the river in Dixfield. In the storehouse they deposited grain and merchandise for their customers on the Dixfield side. At a short distance below the ferry approaches they controlled land on each shore of the river and one or two small row boats which they had used in going back and forth from the store to the store house, and they gave their customers free use of the boats in crossing the river to trade at their store or store house. This privilege was well known to persons trading with the defendants. It was an inducement intended to increase and did increase their business and actually diminished the tolls of the ferry. It was in effect a transportation across the river of persons and property for hire; they received in the profits of the sales what was a full equivalent for the ferriage of their customers, consisting of the public generally. The defendants had an undoubted right to keep and use boats for their own accommodation in passing over the river and transporting their families, servants and goods, and to occasionally carry across a customer and his purchases, or to use them under any similar conditions, because this would not constitute a public carrying for hire. The statute fixes no limit to the exclusive privilege of the holder of a ferry franchise to transport passengers

and property, and in deciding this case it must be determined, by a rule of interpretation consistent with reason and justice, whether the defendants' boats were run usually within the line of travel implied in the location and establishment of the plaintiffs' ferry. There was a change, by regular proceedings, of the location of this ferry up the river thirty or forty rods from the original ferry known as "Green's Ferry", which was then abandoned; and changes were made in the highways leading to the new location in Peru and Dixfield. There was a bridge three and one-half miles above and another seven miles below the ferry. The defendants' boats were kept for the most part at the landings of the old ferry and were run at different points between the old and new locations. Occasionally they were run in and above the passway of the new ferry. The transportation of passengers and goods at this point clearly diminished the plaintiffs' profits; and we therefore hold that these boats were run within the line of travel to which the plaintiffs had the exclusive ferry rights, the criterion being the interference with the ferry franchise causing a natural, appreciable loss of patronage. *Warren, et al., applts.,* v. *Tanner,* 49 L. A. R. 248; *Charles River Bridge* v. *Warren Bridge,* 11 Peters, 420.

*Judgment for plaintiffs. Damages to be assessed at nisi prius.*