(May 10, 1907.)

# J. SHERWOOD, Appellant, v. W. N. STEPHENS, Respondent.

[90 Pac. 345.]

GAME LAW—PRIVATE FISH PONDS—STOCKING THE SAME—TURNING FISH LOOSE FROM PONDS BY THE GAME WARDEN—POLICE POWER—ALLEGATIONS OF COMPLAINT—DEMURRER—OWNERSHIP OF FISH—STATUTORY RIGHT.

1. It is within the police power of the state to enact such general laws as may be necessary for the protection of fish and game, and to regulate and restrict the right to take game or fish, and it may absolutely prohibit the taking thereof for traffic or commerce.

2. There is a fundamental distinction between the ownership which one may acquire in game and the ownership which one may acquire in chattels or lands.

3. A party is prohibited from in any manner impeding the passage of fish up or down the streams in this state by any obstruction placed in the stream.

4. Under the provisions of section 3 of an act passed for the protection of fish and game by the legislature in 1903 (Sess. Laws, p. 189), and as amended in 1905 (Sess. Laws, p. 258), private ponds may be constructed and maintained and stocked with fish, and the right to do so is a statutory right.

5. In order to maintain an action for damages resulting from an alleged releasing of fish from an alleged private pond, the facts showing that such pond was established and stocked with fish in accordance with the provisions of said law must be alleged.

6. Where a pleader wishes to avail himself of a statutory privilege or right granted on particular facts, such facts must be alleged in the complaint.

7. In order to recover in this action, the plaintiff must allege the facts showing that his private ponds were constructed in accordance with the provisions of the statute, and in order to show that he had a property right in the fish therein, must also allege that such ponds were stocked with fish as provided by law.

(Syllabus by the court.)

APPEAL from the District Court of Sixth Judicial District for Fremont County. Hon. James M. Stephens, Judge.

Action against the state game warden to recover $7,500 damages because of his having turned loose an alleged 750,000

fish from alleged private ponds. A general demurrer to the complaint was sustained and a judgment of dismissal entered. *Affirmed.*

Caleb Jones, for Appellant.

The right to construct fish ponds within the state of Idaho, even at the present time, to say nothing of the time prior to the passage of the fish and game law of 1905, is not a statutory privilege. It is a common-law right, and the fish and game laws of Idaho are mere regulations of a right which existed prior to and independent of the passage of any such laws. (19 Cyc. 988, 999.)

If the rule sought to be invoked by respondents was carried to its logical conclusion, the presumption would be that any man constructing or maintaining a fish pond is *prima facie* guilty of a misdemeanor. In other words, he would have to negative the fact, and state in his complaint that he was not violating any of the game laws of the state of Idaho before he could maintain a civil suit.

We take it that the game and fish laws of the state of Idaho apply only to public streams or waters and public lands within the state, and do not, as a matter of fact, apply to private rights to land and waters. (*People v. Conrad,* 125 Mich. 1, 83 N. W. 1012.)

The legislature seems to have recognized that the right to construct the ponds existed before the passage of the act, and only limited their construction so as not to contain any land or waters where wild game or food fishes naturally abound.

Soule & Soule and D. Worth Clark, for Respondent.

The wild game and fish within a state is not the subject of private ownership, except in so far as the people may elect to make it so, and they may, if they see fit, absolutely prohibit the taking of it, or any traffic or commerce in it, if deemed necessary for its protection or preservation of the public good. (*Geer v. State,* 161 U. S. 519, 40 L. ed. 793, 16 Sup. Ct. Rep. 600; *State v. Rodman,* 58 Minn. 393, 59 N. W. 1098; *State v. Snowman,* 94 Me. 99, 80 Am. St. Rep. 380, 46 Atl.

815, 50 L. R. A. 544; *Stevens v. State,* 89 Md. 669, 43 Atl. 929; *Hornbecke v. White,* 20 Colo. App. 13, 76 Pac. 926.)

A riparian proprietor is not permitted, either under the common law or by statute, to impede the passage of fish up or down the stream by means of dams or other artificial obstructions. (13 Am. & Eng. Ency. of Law, 570; *State v. Theriault,* 70 Vt. 617, 67 Am. St. Rep. 695, 41 Atl. 1030, 43 L. R. A. 290; *People v. Horling,* 137 Mich. 406, 100 N. W. 691.)

Under the provisions of the statutes the plaintiff must, in order to state a cause of action, show that his fish ponds were lawfully maintained, and no fish pond can be lawfully maintained unless it complies with the statutory requirements. (*State v. Dolan,* 11 Idaho, 256, 81 Pac. 640.)

·Where a pleader wished to avail himself of a statutory privilege or right given by particular facts, he must show the facts. (*Dye v. Dye,* 11 Cal. 163; *City of Peru v. Barrett,* 100 Me. 213, 109 Am. St. Rep. 494, 60 Atl. 968, 70 L. R. A. 567; *Clark v. Village of North Muskegon,* 88 Mich. 308, 50 N. W. 254; *Ricks v. Reed,* 19 Cal. 551; *Flemming v. Indianapolis,* 6 Ind. App. 80, 32 N. E. 1135.)

SULLIVAN, J.—This action was brought by the appellant to recover $7,500 damages alleged to have resulted from the defendant, who is respondent here and who is state game warden, freeing and turning 750,000 fish out of ponds alleged to belong to the appellant.

It is alleged in the complaint that the appellant is the owner of, and in the possession of, the S. W. ¼ of section 33, Twp. 16 N., Range 43 E., B. M., in Fremont county; that the plaintiff did between the year 1892 and the year 1904 construct four artificial fish ponds on said land, and did supply said ponds with water from a certain spring situated on said land and connected said ponds with artificial waterways, and did erect and construct at the outlet of each pond certain gates, the raising of which would drain each of said ponds; and also supplied each of said ponds at the outlet and intake thereof with screens, and also placed screens in the artificial waterways constructed as aforesaid, the said screens being so placed to prevent fish in said ponds escaping therefrom; that said

ponds were supplied with water taken from said springs and an outlet from said springs was constructed for the purpose of running the water into what is known as Henry's lake; that after constructing and filling said ponds with water, the plaintiff stocked them with fish; that on or about the second day of August, 1905, the respondent entered upon plaintiff's said land and did with force and violence, without his consent and against his protest, raise the gates at the outlet of each of said ponds, and removed the screens placed at the outlet and intake of said ponds, thereby draining said ponds and freeing 750,000 fish, the property of plaintiff, and compelled the same to go from said ponds through said channels into the waters of Henry's lake; that by reason of such action, the plaintiff was damaged in the sum of $7,500.

A general demurrer was filed to said complaint on the ground that it did not state facts sufficient to constitute a cause of action, which demurrer was sustained by the court. Thereupon the plaintiff declined to amend his complaint or to plead further and a judgment of dismissal was entered. This appeal is from that judgment.

It will be observed from the allegations of the complaint that the appellant seeks to recover on account of the loss of 750,000 fish, which he alleges the respondent freed from certain ponds which he had constructed upon his premises between the years 1892 and 1904, and had thereafter stocked with fish. It is contended by the respondent that it does not appear from the allegations of the complaint from whence the appellant procured the fish with which he stocked said ponds, nor does it appear therefrom at what time subsequent to the year 1904 said ponds were so stocked, nor does it appear that the ponds did not contain water where food fish naturally abound; that it cannot be ascertained from the complaint whether or not the waters turned into said ponds were waters in which food fish naturally abound. The question is presented whether the complaint should set forth any or all of those matters in order to constitute a cause of action.

It is contended by counsel for appellant that it is not necessary to allege any of those matters or facts; that prior to the passage of the fish and game law in Idaho, the owner of

land had a common-law right to construct fish ponds upon any of the natural streams of the state; that the right to construct such fish ponds is not a statutory privilege; that it is a common-law right, and the fish and game laws of Idaho are mere regulations of that right, and cites 19 Cyc., page 988, where it is said: "As a general rule, the right of hunting or fishing on lands owned by private individuals is in the owner"; and again at page 992 it is said: "The right of hunting or fishing on public lands and waters belongs in common to all members of the public."

We do not question that authority, but this is not a question of hunting and fishing; it is a question of the right to establish private ponds and stock them with fish under the provisions of our fish and game laws.

The doctrine is well established that by reason of the state's control over fish and game within its limits, it is within the police power of the legislature to enact such general laws as may be necessary for the protection and regulation of the public's right in such fish and game, even to the extent of restricting the use of or right of property in the game after it is taken or killed. (19 Cyc. 1006; 13 Am. & Eng. Ency. of Law, p. 570.) In *Ex parte Maier*, 103 Cal. 476, 42 Am. St. Rep. 129, 37 Pac. 402, the principle is clearly set forth in the following language: "The wild game and fish within a state belong to the people in their collective sovereign capacity. It is not the subject of private ownership except in so far as the people may elect to make it so, and they may, if they see fit, absolutely prohibit the taking of it or any traffic or commerce in it if deemed necessary for its protection or the preservation of the public good."

In *Hornbecke v. White*, 20 Colo. App. 13, 76 Pac. 926, where the court had under consideration a statute making the possession of game unlawful unless permission for such possession was shown, the court held that such statute was a valid police power, and in the course of the opinion the court used the following language: "Thus it will be seen that the highest judicial authority in the land has. laid down the principle that the state in its sovereign capacity has power to limit and qualify the ownership which a person may acquire in game,

with such conditions and restrictions as it may deem necessary for the public interest, and that there is a fundamental distinction between the ownership which one may acquire in game and the perfect nature of ownership in other property.''

As bearing on the same question, see *Geer v. State,* 161 U. S. 519, 40 L. ed. 793, 16 Sup. Ct. Rep. 600; *State v. Rodman,* 58 Minn. 393, 59 N. W. 1098; *State v. Snowman,* 94 Me. 99, 80 Am. St. Rep. 380, 46 Atl. 815, 50 L. R. A. 544; *Stevens v. State,* 89 Md. 669, 43 Atl. 929.

It is clear from the authorities that the ownership acquired in game or fish is not such an ownership as one acquires in chattels or lands, but is merely a qualified ownership, and that the possession of fish and game is at all times subject to such regulations as the legislature may see proper to make, subject to the provisions of the constitution. Under the common law a party has no right to construct a fish pond upon natural streams where food fish naturally abound, so as to prevent the fish from going up and down such stream. One cannot impede the passage of fish up or down the stream by means of artificial obstructions. (13 Am. & Eng. Ency. of Law, 570.) In the case of *State v. Theriault,* 70 Vt. 617, 67 Am. St. Rep. 695, 41 Atl. 1030, 43 L. R. A. 290, the court had under consideration the rights of a riparian proprietor to use a stream for domestic and other purposes, and for taking fish therefrom, and used the following language: ''He can use it in a reasonable manner for domestic purposes, for creating power, and for taking fish therefrom. He must not divert it from its course, nor pollute it, but leave it so that the land owners on the stream above and below him can enjoy their full like use of the water, and among these, the right to take fish from the stream. This right implies and carries with it the common right to have fish inhabit and spawn in the stream. For this purpose they must have a common passageway to and from their spawning and feeding grounds. Fish themselves are *ferae naturae,* the common property of the public or of the state in this country. From this common property the owner of the soil over which the nonboatable stream flows has the right to appropriate such as he may capture and retain, but his right of capture and

appropriation is subject to regulation and control by the representatives of the people, so that there shall continue to be a common property." (See, also, *People v. Horling,* 137 Mich. 406, 100 N. W. 691.)

In 1903 the legislature of the state of Idaho amended the fish and game law, and section 3 of said act, found on page 189 of the Session Laws of 1903, is as follows: "It shall be unlawful for any person or persons to wantonly waste or destroy the fish or game of this state, or to take, kill, capture or destroy any of the game, animals or birds in excess of the number hereinafter provided at any time of the year. Any person, association or corporation may establish, maintain or own a private park, lake or stream for fish or game, or both, on premises owned by him or it, respectively, and to that end may employ means to preserve and propagate such fish and game, and it shall be a misdemeanor to trespass thereon, provided that no private park shall be established under the provisions of this act so as to contain any lands or water where wild game or food fishes naturally abound, and shall not be construed so as to permit any person or persons to barter or sell, at any time of the year, any fishes not the original product of the water contained in said park."

In 1905 said section was re-enacted, and the following clause added to it: "And it shall be a misdemeanor to take the fish or spawn from any of the lakes or streams of the state and place them in private ponds or parks at any time of the year, and it shall also be a misdemeanor for any person or persons to sell or offer for sale any fish not propagated or grown in a private park or pond." (Sess. Laws, 1905, p. 258.)

It will be borne in mind that according to the allegations of the complaint, the ponds referred to were not completed until the year 1904, and, of course, were stocked thereafter with fish. Prior to that time, the matter of constructing private ponds and stocking them was regulated by statute, and the right to construct such ponds and stock them is subject to the following statutory conditions: (1) Such pond must be upon land owned by the proprietor; (2) It must not contain any lands or waters where wild game or food fish naturally

abound; (3) No fish or spawn from any of the lakes or streams of this state must be used in stocking such pond.

It is clear that the right to maintain a private fish pond in this state is a statutory right. That being true, the plaintiff, in order to maintain his suit, must allege those facts which show the establishment of such ponds and the stocking of the same to bring him within the provisions of the statute. In order to recover, he must allege and prove facts to show that his ponds were constructed according to the provisions of the statute, and that he stocked them as required by the statute in order to show a property right in the fish. The burden of establishing those facts is placed upon the plaintiff, and it is incumbent upon him to make the necessary allegations, and establish those allegations by proof when they are denied. In *State v. Dolan*, 11 Idaho, 256, 81 Pac. 504, this court had under consideration the character of certain fish ponds which were alleged to be private ponds and the court said: "The private pond referred to in said section 3 must be on premises owned by such person or corporation respectively, and such private pond must not be established so as to contain any water where food fishes naturally abound. That being true, private ponds can only be established in waters where said food fishes do not naturally abound."

A person's right to establish and maintain a private fish pond is a statutory right in this state, and before he can recover, he must bring himself within the provisions of the statute. Where a pleader wishes to avail himself of a statutory privilege or right granted him on particular facts, such facts must be alleged in the complaint. (*Dye v. Dye*, 11 Cal. 163; *Inhabitants of the City of Peru v. Barrett*, 100 Me. 213, 109 Am. St. Rep. 494, 60 Atl. 968, 70 L. R. A. 567; *Clark v. Village of North Muskegon*, 88 Mich. 308, 50 N. W. 254; *Ricks v. Reed*, 19 Cal. 551; *Flemming v. City of Indianapolis*, 6 Ind. App. 80, 32 N. E. 1135.)

Until the plaintiff has alleged facts sufficient to show that his ponds were private ponds within the provisions of the fish and game law, and that they were stocked as provided by said act, thus showing that he has a right to maintain such ponds, and thus showing that he has acquired a property right

in the fish, his complaint does not state a cause of action. Those facts are within the appellant's knowledge and he must allege them in order to state a cause of action. Appellant only asks for damage resulting from turning loose the fish, and his complaint must contain allegations sufficient to show that he has a property right in them.

Costs are awarded to the respondent.

Ailshie, C. J., concurs.