743 P.2d 92

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Bill BLUME, Defendant-Appellant.**

**No. 16495.**

Court of Appeals of Idaho.

Sept. 2, 1987.

See also 113 Idaho 220, 743 P.2d 88 (App.).

Bill O. Blume, pro se.

Jim Jones, Atty. Gen. by David R. Minert, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

The issue presented is whether a magistrate, who entered a judgment of conviction for a misdemeanor and imposed a sentence containing a fine, should have been disqual-

ified later from finding the defendant in contempt for failure to pay the fine. Upon a petition for writ of review, the district court upheld the magistrate's refusal to be disqualified. Today we affirm.

This case is a chapter in the long-standing dispute between Bill Blume and the State of Idaho over his operation of a barbershop without a license. The dispute arises from Blume's assertion that state regulation infringes upon his religious liberties. The constitutional dimensions of this dispute are fully examined in *Gregersen v. Blume*, 113 Idaho 220, 743 P.2d 88 (Ct.App.1987). The question before us here is different; it focuses upon a litigant's right to a disinterested and impartial judge.

After the state filed a misdemeanor complaint against Blume for operating without a license, he invoked I.C.R. 25(a) and automatically disqualified the first magistrate assigned to the case. Another magistrate, the Honorable Debra A. Heise, was appointed pursuant to I.C.R. 25(e). Blume then moved to disqualify Judge Heise for cause under I.C.R. 25(b).[1] He contended that Judge Heise—as a citizen, a state employee and an "advocate of the abstract concept called the State of Idaho"—could not render impartial justice in a prosecution brought by the state. Judge Heise conducted a hearing and denied the motion. Blume was convicted and was ordered to pay a $200 fine, plus costs. He did not appeal the judgment of conviction.

Several months later, the prosecutor moved for an order directing Blume to show cause why he should not be held in contempt for failing to pay the fine. A hearing was held. Blume orally renewed his motion to disqualify Judge Heise and he refused to participate further in the proceedings. Judge Heise orally pronounced Blume in contempt and imposed a sanction of five days in jail. Later that day the judge—apparently concerned that the order to show cause might not have given Blume full notice that he faced a possible con-

1. Blume's disqualification motions actually referred to I.R.C.P. 40, the civil counterpart of I.C.R. 25. Until 1982, I.C.R. 25 simply stated that the civil rule controlled. However, in that year, the criminal rule was fleshed out with a parallel set of provisions.

tempt sanction—ordered his release.[2] An amended order to show cause was issued and a new hearing date was set. Meanwhile, Blume filed a second written motion to disqualify Judge Heise for cause. This motion apparently was denied at the hearing. Blume then promised to pay his fine in installments. The order to show cause was dismissed, subject to being reissued if Blume breached his promise. Nevertheless, Blume petitioned the district court for a writ of review of Judge Heise's refusal to disqualify herself. The district court considered and denied the petition. Blume has appealed the district court's ruling.

I

Prefatorily, we must decide whether the district court had jurisdiction to entertain Blume's petition for a writ of review. The state argues that the district court lacked jurisdiction because no written judgment of contempt appears in the record. The state relies on *State v. Mason*, 102 Idaho 866, 643 P.2d 78 (1982), in which our Supreme Court held that a district court ordinarily cannot entertain an appeal from a criminal conviction in the magistrate division unless a written judgment has been entered in the record. The state would have us hold that the same is true of an appeal from a contempt sanction.

However, we do not think such an appeal was filed in this case. Indeed, Blume did not file an appeal at all; rather, as we have noted, he filed a petition for writ of review.[3] The petition alleged generally that Judge Heise had "acted in excess of juris-

diction." The appeal now before us refers only to the district court's denial of the petition for writ of review. The issue presented is Judge Heise's alleged lack of jurisdiction after refusing to be disqualified in the contempt proceeding. Consequently, we need not decide the broad question posed by the state, whether absence of a written order would bar a contemnor from appealing a judgment of contempt. Our focus is solely on the disqualification question.

■ A litigant is not required to await final judgment before challenging a trial judge's refusal to be disqualified. Rather, he may seek immediate relief by means of a writ of prohibition.[4] *Hultner-Wallner v. Featherstone*, 48 Idaho 507, 283 P. 42 (1929); *see also Price v. Featherstone*, 64 Idaho 312, 130 P.2d 853 (1942). Although Blume's pleading was denominated a petition for a writ of review rather than for a writ of prohibition, we evaluate a pleading by its substance rather than by its caption. The substance, as we view it, was that Blume wanted the district court to determine that Judge Heise was disqualified and no longer had jurisdiction in the case. Judge Heise's participation was still a potential concern to Blume because the contempt proceedings had been discontinued upon his promise to pay. Resumed proceedings were possible. We conclude that Blume's petition was properly entertained by the district court.

II

■ We next consider whether Blume was entitled to an automatic disqualifica-

---

2. As a result of his brief detention, Blume eventually filed a "Notice of Tort Claims" alleging false arrest, false imprisonment and malfeasance of office. However, the outcome of these claims is not disclosed by the record.

3. For many years a petition for writ of review was the only means of contesting a contempt citation. However, as this Court recently explained, a judgment of contempt is now considered an appealable order. *See In Re Contempt of Reeves*, 112 Idaho 574, 733 P.2d 795 (Ct.App.1987).

4. We do not suggest that a litigant *must* employ a writ of prohibition to challenge a refusal to be disqualified. The litigant *may* choose to raise the issue through an interlocutory appeal by permission or by an appeal from the ultimate

judgment. *See, e.g., State v. Schaffer*, 112 Idaho 1024, 739 P.2d 323 (1987) (denial of automatic disqualification challenged on appeal). Indeed it could be argued that since a writ of prohibition is available only if there is "not a plain, speedy and adequate remedy in the ordinary course of law," I.C. § 7-402, a petitioner should be required to show that he has sought unsuccessfully to pursue an interlocutory appeal by permission. The record does not affirmatively show that Blume ever attempted such an appeal. However, he did plead that he had "no other plain, speedy or adequate remedy," and it does not appear that the state controverted this allegation by raising the possibility of an appeal by permission.

tion of Judge Heise at the beginning of the contempt proceedings. At all times relevant to this case, I.C.R. 25(a) provided, in pertinent part, as follows:

> In any action in the district court or the magistrates division thereof, any party may disqualify one (1) judge by filing a motion of disqualification which shall not require the stating of any grounds therefor, and the granting of such motion for disqualification, if timely, shall be automatic.... Such motion must be made not later than 5 days after service of a notice setting the action for trial, pre-trial or hearing on the first contested motion, and must be made before any contested proceeding in such action has been submitted for decision to the judge....

As noted above, Blume automatically disqualified one judge when the misdemeanor prosecution was initiated. However, Blume asserts that the contempt proceeding constituted a new proceeding, separate and distinct from the underlying criminal prosecution, at which he again had a right to one automatic disqualification. We disagree.

Rule 25 allows one automatic disqualification in any "action." Consequently, the issue is whether the contempt proceeding was a separate "action" within the meaning of the Rule. No Idaho appellate court has yet confronted this issue. However, the issue has been resolved in other jurisdictions. The leading case is *McClenny v. Superior Court*, 60 Cal.2d 677, 36 Cal. Rptr. 459, 388 P.2d 691 (1964). Justice Tobriner, writing for a unanimous court, held that a contempt proceeding brought to enforce a domestic relations decree was a continuation of the underlying action and that a contemnor's motion for an automatic disqualification of the judge was, for that reason, untimely. Justice Tobriner observed that allowing a party automatically to disqualify a judge who attempts to enforce a previous order would "unduly impede the administration of justice" and "would permit litigants to obtain, by repeated cycles of a contemptuous act and a motion [for automatic disqualification], a perpetually fresh forum for testing disadvantageous decisions." *Id.* 36 Cal.Rptr. at

467; 388 P.2d at 699. The Alaska Court of Appeals recently arrived at a similar conclusion, citing *McClenny*. *See Webber v. Webber*, 706 P.2d 329 (Alaska Ct.App.1985). In other contexts as well, courts have expressed the view that a contempt proceeding is a continuation of the underlying suit. *E.g., Opperman v. Sullivan*, 330 N.W.2d 796 (Iowa 1983) (because contempt proceeding is part of underlying dissolution case, trial court did not need to establish independent basis for jurisdiction); *Frey v. Willey*, 166 P.2d 659 (Kansas 1946) (contempt proceeding to enforce injunction is part of underlying suit); *Shapiro v. Shapiro*, 303 N.Y.S.2d 565 (N.Y.Sup.Ct.1969) (motion to hold party in contempt for violation of court order is part of underlying action, and must be brought in same court as that action).

We note that these cases involved what is commonly called "civil" contempt—an exercise of the contempt power to coerce compliance with a prior court order rather than simply to punish disobedience of the order. Although the contempt proceedings in the present case arose from a misdemeanor prosecution, the primary object manifestly was to obtain Blume's compliance with an obligation to pay the fine earlier imposed. The magistrate discontinued the proceedings when Blume promised to pay. Accordingly, we believe the *McClenny* rule—treating the contempt proceeding as a continuation of the underlying case, and precluding a second automatic disqualification—is applicable here.

We further believe *McClenny* to be sound law. A judge should not be lightly divested of the power to enforce his or her own orders. The contempt power is virtually the only tool a court can employ to compel obedience of its decisions. In addition, the judge who presides over the underlying action is familiar with the subject matter of the suit, and often will be in the best position to evaluate the merits of one party's motion to hold the other in contempt. Accordingly, we reject Blume's ar-

gument that he was entitled to a second automatic disqualification in this case.[5]

## III

■ Finally, we turn to Blume's contention that the magistrate should have disqualified herself for cause. As noted above, Blume filed a motion to disqualify, and a supporting affidavit, in the early stages of the underlying criminal prosecution. The motion was denied and Blume was convicted. The motion was renewed during the contempt proceeding. With one exception discussed below, the second written motion was based upon the same grounds asserted in the previous motion.

In our view, the original motion to disqualify was untimely. I.C.R. 25(c) provides that a motion to disqualify for cause "must be made before any contested proceeding in the action has been submitted for decision to the judge sought to be disqualified." Here, Blume filed a motion, styled a "Demand for Bill of Particulars" on July 18, 1985. The gist of the motion was that the terms "operate" and "barbershop," used in the criminal complaint, were "too vague to allow for preparation of an effective defense." A hearing was conducted on July 30. Blume moved to dismiss and Judge Heise, having replaced the magistrate automatically disqualified, denied the motion. Almost a month later, Blume filed his motion to disqualify Heise for cause.

Common sense suggests why a motion to disqualify for cause must be made before a judge decides a contested question. Any other approach would allow a party to await the ruling of the court and then to seek a friendlier forum if the ruling is unfavorable. As our Supreme Court has stated, "[t]o permit a party to disqualify a judge after that party finds how the judge will rule on a matter before him would permit forum shopping of the worst kind."

*Dustin v. Beckstrand,* 103 Idaho 780, 654 P.2d 368 (1982).

Of course, there are situations where strict time limitations would not apply to disqualifications for cause. Both the federal and Idaho constitutions guarantee litigants the right to a disinterested and impartial judge. *See Ward v. Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *State v. Bitz,* 93 Idaho 239, 460 P.2d 374 (1969). Thus, a late motion to disqualify could be deemed timely if the moving party neither knew nor should have known the facts indicating the alleged judicial bias or interest when the lawsuit began. Furthermore, if the facts themselves did not arise until the time prescribed by rule had expired, a motion made promptly after the facts emerged ought to be deemed timely.

In the present case, Blume's first motion to disqualify failed to come within this exception. Blume sought the disqualification because (1) as a citizen of Idaho, Judge Heise was a "party" to a suit brought by the state; (2) as an employee drawing her salary from the state, Judge Heise had an interest in any proceedings that could result in imposition of a fine; (3) as a lawyer, Judge Heise previously had represented citizens, municipalities, or the state of Idaho in legal proceedings, and thus had been counsel to a "party" in the present lawsuit; and (4) Judge Heise recognized the sovereignty of the state of Idaho and was, for that reason, biased against Blume's defense that the state had no authority over him. In his second motion to disqualify, filed during the contempt proceedings, Blume further alleged that Judge Heise had a personal interest in the case because she issued the underlying order which he concededly had disobeyed.

It appears that Blume knew at the outset of the misdemeanor prosecution that Judge

---

5. Blume has cited *State v. Bearshield,* 104 Idaho 676, 662 P.2d 548 (1983), in support of his position. In that case, the Supreme Court held that a litigant had a right to one automatic disqualification at the commencement of a proceeding for post-conviction relief. The court was influenced by the peculiar history of habeas corpus proceedings, which have long been considered separate from the underlying cases out of which they arose. *Id.* That peculiar history is not germane to the case before us. In any event, the result in *Bearshield* has been modified by rule. Effective July 1, 1983, the right to an automatic disqualification does not apply in statutory post-conviction proceedings unless the judge assigned to those proceedings is different from the judge who presided in the underlying criminal case. I.C.R. 25(a).

Heise was a citizen of Idaho, an employee of the state, a former attorney who had previously represented public officers or entities, and a believer in the "abstract concept called the State of Idaho." Accordingly, the motion to disqualify was untimely on those grounds. However, we believe that Blume's second motion may have been timely insofar as it asserted Judge Heise's alleged bias deriving from the fact that she issued the underlying order. This allegation necessarily was based upon facts which did not exist, and therefore could not have been raised, when the misdemeanor prosecution commenced. Accordingly, we will consider the merits of Blume's argument on this point.

A judge is not disqualified from presiding at a contempt proceeding merely because she issues the order which has been violated. *See generally* 46 AM.JUR.2D *Contempt* § 174 (1969). To the contrary, it is important that a judge be empowered to enforce her own orders. *See McClenny v. Superior Court, supra.* Nevertheless, it has been recognized that a judge should disqualify herself from presiding over a subsequent contempt proceeding where "contemptuous conduct, though short of personal attack, may still provoke a trial judge and so embroil [her] in controversy that [s]he cannot 'hold the balance nice, clear and true between the State and the accused'...." *Taylor v. Hayes,* 418 U.S. 488, 501, 94 S.Ct. 2697, 2704, 41 L.Ed.2d 897 (1974) (citations omitted); *see also Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971).

Blume has made no such showing in this case. His affidavit in support of the second motion to disqualify stated only that "Heise signed and entered the original order for which I am allegedly in contempt and therefore has a personal interest in this case, namely, to support and maintain her pretended authority over me." Blume has not provided us with a transcript of the proceedings, nor has he pointed to any specific behavior on the part of the magistrate demonstrating that she had become personally embroiled in the matter. To the contrary, Judge Heise's decision to dismiss the order to show cause when Blume promised to pay the fine suggests that the magistrate acted upon the appropriate motive of obtaining compliance with a lawful judgment of the court. We cannot fault the judge for performing her duty.

IV

Finally, Blume challenges the constitutionality of Rule 25. He argues that the Rule, which allows a challenged judge to make the initial determination as to her own disqualification for cause, violates Art. 1, § 18, of the Idaho Constitution because it forces parties to proceed before a biased judge. Because Blume has failed to show that Heise was in fact biased, we need not address this argument further. In any event, as we have noted, an aggrieved litigant may obtain prompt review of a disqualification decision through an interlocutory appeal by permission or, if such an appeal is not allowed, by a petition for a writ of prohibition.

Accordingly, the district court's order, denying the petition for a writ of review of the magistrate's refusal to disqualify herself, is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.