743 P.2d 88

**Marvin D. GREGERSEN, Chief, Bureau of Occupational Licenses, Department of Self-Governing Agencies of the State of Idaho; Board of Barber Examiners, State of Idaho, Plaintiffs-Respondents,**

v.

**Bill Oliver BLUME, Defendant-Appellant.**

**No. 16506.**

Court of Appeals of Idaho.

Sept. 2, 1987.

Rehearing Denied Oct. 6, 1987.

Petition for Review Denied Oct. 30, 1987.

See also 113 Idaho 224, 743 P.2d 92.

Bill Oliver Blume, defendant-appellant pro se.

Jim Jones, Atty. Gen., by Daniel G. Chadwick, Deputy Atty. Gen., Boise, for plaintiffs-respondents.

BURNETT, Judge.

This appeal presents a religious challenge to the secular authority of the state to regulate a commercial activity. Bill Blume, the proprietor of a business known as "Ye Olde Contract Barber" or "Bill's Barbershop," contends that the State of Idaho is infringing impermissibly upon his constitutionally protected religious beliefs by requiring him to obtain a license and a certificate of registration as a barber. Confronted with Blume's refusal to be regulated, the Idaho Bureau of Occupational Licenses and the Board of Barber Examiners sought and received from the district court a judgment enjoining Blume from practicing his occupation until he complies with state laws. For reasons explained below, we affirm the judgment.

The essential facts are undisputed. For more than twenty years, Blume was registered, and his shop was licensed, as required by chapter 5, title 54, Idaho Code. However, in the spring of 1984, Blume adopted a religious faith called the "New Covenant Theocracy." The central them of this faith, as described by Blume, is that all the world is a theocracy. God alone is the sovereign, law-giver and judge. The "New Covenant Theocracy" apparently leaves no room for its followers to accept secular authority. Indeed, Blume informs us that any consent to human government would be an act of rebellion against the divine order.

Pursuant to his newly adopted beliefs, Blume decided in 1984 that he would no longer submit to any government regulation of his occupation. He declined to renew his license or certificate of registration. Subsequently, he was convicted twice of misdemeanor offenses for violating the licensure and registration statute, I.C. § 54–501. However, the filing of criminal complaints did not deter Blume from continuing his business. While the second prosecution was pending, this civil action for injunctive relief was brought against him. He responded *pro se*, asserting an infringement of religious freedom and counterclaiming for damages caused by loss of earnings and emotional distress. On cross-motions for summary judgment, the district court held that no disputed issues of material fact existed and that the

state was entitled as a matter of law to the relief it sought. Accordingly, the court permanently enjoined Blume from "barbering in the State of Idaho without first [complying with] ... [c]hapter 5, [t]itle 54, Idaho Code." The court dismissed Blume's counterclaim. This appeal followed.

## I

Blume's brief presents an articulate, and in some passages eloquent, expression of his beliefs. He offers not so much a legal argument as an attack upon the rule of law itself. In a discourse drawing upon concepts of theology and political theory, Blume portrays a seemingly irreconcilable conflict between his "New Covenant Theocracy" and "democratic statism." He contends that the First Amendment requires government to be neutral in this conflict—to refrain from compelling any adherent of Blume's faith to follow a secular rule. Of course, any such application of the First Amendment would disable government with respect to Blume or to others who share his beliefs.

Our analysis necessarily is anchored by the very proposition that Blume disputes. It is that the people possess a sovereign power; that in the exercise of this power, they may create institutions of government; and that they may imbue the government with power, as defined by law, to regulate their activities. This proposition lies at the heart of the United States Constitution. It finds vivid expression in the Constitution's opening words: "We the people...."

Through the Constitution, the American people have struck a balance between order and liberty. As our Court has observed: "Individuals must sacrifice a part of their 'liberty' in order to empower a government to regulate through passage and enforcement of laws necessary for the general public welfare." *State v. Gibson*, 108 Idaho 202, 203, 697 P.2d 1216, 1217 (Ct.App. 1985). All of us bear this sacrifice. "Citizens may not choose to receive the benefits

of a civilized society without sharing the burdens." *State v. Staples*, 112 Idaho 105, 107, 730 P.2d 1025, 1027 (Ct.App.1986). Theodore Roosevelt made the point directly when he said, "No man is above the law and no man is below it, nor do we ask any man's permission when we require him to obey it."

But the Constitution is not merely an organ of government; it is also a charter of individual rights. The First Amendment, in its references to religion, embraces two concepts: freedom to believe and freedom to act. "The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society." *Cantwell v. Connecticut*, 310 U.S. 296, 303–04, 60 S.Ct. 900, 903–04, 84 L.Ed. 1213 (1939). Thus, Blume is free to maintain and to express his belief that God is the sole sovereign. However, his actions are subject to some degree of regulation. *United States v. Lee*, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982); *Bissett v. State*, 111 Idaho 865, 727 P.2d 1293 (Ct.App.1986).

We recognize that Blume rejects this dichotomy between thought and action. He argues that his particular faith commands action. He tells us that he cannot preserve the integrity of his beliefs if he acquiesces to secular authority in any form, even by so simple an act as procuring a barber's registration and license. Although we appreciate the sincerity of Blume's argument, we cannot fashion First Amendment jurisprudence according to the breadth or rigidity of a particular religious doctrine. Instead we must apply objective, general standards to any claim of religious infringement.

## II

A First Amendment claim may invoke either the establishment clause or the free exercise clause. The establishment clause prohibits government sponsorship of religion. It requires that government neither aid nor formally establish a religious faith. The free exercise clause is a negative corollary of the establishment clause. It bars the government from prohibiting any reli-

gious belief and it requires the government to make some accommodation for religious practices when it pursues secular ends that incidentally affect religion. Blume appears to rest his appeal on both clauses. He attempts to invoke the establishment clause by contending that "democratic statism" is a belief system in competition with theocracy. He urges that government ought not to favor one belief system over the other. He attempts to invoke the free exercise clause by asserting that he cannot effectively practice his religion if he must accept secular regulation as a barber.

We are not persuaded that "democratic statism" is a government-sponsored form of religion within the ambit of the establishment clause. In any event, our focus here is not upon democracy in general but upon the state barbering laws. A law, or scheme of laws, will pass muster under the establishment clause if: (1) it has a secular purpose; (2) it has a primary secular effect; and (3) it does not thrust the government into an excessive entanglement with religion. *E.g., Edwards v. Aguillard,* —— U.S. ——, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987); *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). We think these tests are satisfied here. The barbering laws, set forth at chapter 5, title 54, Idaho Code, are directed at public health and safety aspects of a commercial activity. Although the laws may incidentally affect Blume's religious beliefs, their primary effect is clearly secular. These laws do not entangle the government with religion except in the rare instance, such as the case now before us, where an individual espouses a faith with tenets so sweeping that all secular laws are implicated. Accordingly, we reject Blume's claim of religious infringement insofar as it is grounded in the establishment clause.

The standard governing a free exercise claim usually is expressed in three parts, although some parts may be consolidated. A court must inquire (1) whether the law in question imposes a significant burden upon the practice of religion; (2) if so, whether the law serves an overriding governmental purpose; and (3) whether the law is essential to that purpose. *E.g., Wisconsin v.*

*Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Bissett v. State, supra* (focusing on the latter two elements). The first inquiry causes us some disquietude. In an ordinary case, we could not conceive that state barbering laws would produce a significant impact upon the practice of religion. However, as noted above, the tenets of Blume's faith are so far-reaching that such an impact is unavoidable. Generally it is beyond the judicial function or competence to weigh the soundness of an individual's religious beliefs. *United States v. Lee, supra.* "Court are not arbiters of scriptural interpretation." *Thomas v. Review Board of Indiana Employment Security Division,* 450 U.S. 707, 716, 101 S.Ct. 1425, 1431, 67 L.Ed.2d 624 (1981). On the other hand, a court is not bound to accept at face value a claim which is "so bizarre, so clearly nonreligious in motivation, as not to be entitled to protection under the free exercise clause." *Id.* at 715, 101 S.Ct. at 1431. Although Blume's claim obviously is an unusual one, we decline to characterize it as bizarre or clearly nonreligious. Consequently, for the sake of argument, we will accept the proposition that the state barbering laws do produce a significant impact upon Blume's practice of religion.

The next question is whether these laws serve an overriding state interest. It is well settled that the state may regulate the haircutting trade in order to protect public health and safety. *Montejano v. Rayner,* 33 F.Supp. 435 (D.Idaho 1939); *Byrd v. Employment Security Agency,* 86 Idaho 469, 388 P.2d 100 (1964); *Pearce v. Moffatt,* 60 Idaho 370, 92 P.2d 146 (1939). The state's interest in protecting public health and safety is readily apparent. The spread of infection or contagious diseases is a threat wherever people congregate and interact. The need for proper hygiene in services that cater to the public is of paramount importance. State regulation tends to ensure that qualified persons provide such services. The tonsorial profession is no exception. Barbers in Idaho are required to be proficient not only in haircutting but in scientific fundamentals of such

topics as hygiene, bacteriology, histology of hair and skin, elementary chemistry relating to sterilization and antiseptics, and diseases of the hair or skin. I.C. §§ 54–506(4), 54–507. They also must be free of disease themselves. I.C. § 54–524. In our view, the barbering laws serve a governmental interest that overrides the religious claim made here.

The last question is whether licensure and registration are essential to this purpose. We think they are. Effective regulation requires "mandatory, continuous and uniform compliance." *Bissett v. State,* 111 Idaho at 868, 727 P.2d at 1296. Registration and licensure are universally accepted, virtually indispensable methods of identifying persons engaged in a regulated activity and assuring their conformance to applicable standards. Blume has not suggested, nor can we postulate, a less intrusive alternative to these regulatory devices if the overriding public interest in protecting health and safety is to be served. Accordingly, we reject Blume's free exercise claim. The state barbering laws do not impermissibly infringe upon his religious freedom under the Constitution.

We emphasize that Blume's right to believe in the "New Covenant Theocracy" remains uninhibited. The barbering laws do not censor religious thought or expression. Concededly, the laws may incidentally affect Blume's conduct in the practice of his religion. But, as former Chief Justice Burger has noted:

> [E]very person cannot be shielded from all the burdens incident to exercising every aspect of the right to practice religious beliefs. When followers of a particular sect enter into commercial activity as a matter of choice, the limits they accept on their own conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes which are binding on others in that activity.

*United States v. Lee,* 455 U.S. at 261, 102 S.Ct. at 1057.

The judgment of the district court is affirmed. Costs (exclusive of attorney fees, which have not been requested) to respondents.

WALTERS, C.J., and SWANSTROM, J., concur.