835 P.2d 644

STATE of Idaho, Plaintiff-respondent, cross appellant-respondent on appeal,

v.

Evan O. KOLLER, Defendant-appellant, cross respondent-appellant on appeal.

No. 19054.

Supreme Court of Idaho, Pocatello, May, 1992 Term.

July 17, 1992.

Whittier, McDougall, Souza, Murray & Clark, Pocatello, for defendant-appellant. John C. Souza, argued.

Larry EchoHawk, Atty. Gen., W. Dallas Burkhalter, Deputy Atty. Gen., Boise, for plaintiff-respondent. W. Dallas Burkhalter, argued.

BAKES, Chief Justice.

Evan O. Koller appeals his conviction of the misdemeanor of outfitting without a license. We affirm.

In November of 1987, Albert Lewis (Lewis), an undercover agent for the Idaho Outfitters and Guides Licensing Board, began investigating Evan Koller (Koller) for alleged violations of the Outfitters and Guides Act, I.C. § 36–2101 et seq. Lewis initiated the investigation after being given newspaper advertisements which had been placed in *The Salt Lake Tribune*, the Lo-

gan *Herald Tribune*, and *The Deseret News*. Using the undercover name of Hal Taguen, Lewis contacted Koller and arranged for a deer hunt with Koller. Koller sent Lewis a draft brochure detailing the "guided hunts on private land for trophy mule deer." Lewis made an advanced payment of $1,200 to secure the hunt.

On October 31, 1988, Lewis arrived at the Koller residence in Cornish, Utah and paid an additional $1,300 to Koller. The Kollers provided Lewis with accommodations for the night and served him dinner and breakfast. The next day, Koller drove Lewis on Koller's property into Idaho in search for deer. After crossing the border from Utah into Idaho, Lewis and Koller came across a small herd of deer and Lewis spotted a buck. However, Koller advised Lewis that he could find a better buck to shoot, and they proceeded further into Idaho. Lewis and Koller then came across another buck which Lewis shot. The hunt was videotaped by Koller. The deer was taken back to Koller's residence where Lewis and Koller skinned and caped it, and Koller put a meat sack on it to keep it clean.

As a result of this incident, Koller was cited and found guilty in magistrate court of outfitting without a license. The judgment was affirmed by the district court. Koller filed this appeal, arguing: (1) that the Outfitters and Guides Act (Act), under which he was convicted, cannot be applied to activities conducted on private land; (2) that the Act violated his constitutional right to equal protection and due process; and (3) that he was entrapped by the State into committing the crime. We address each of these arguments in turn.

When this Court reviews a case appealed from a district court's appellate review of a magistrate's decision, we independently review the magistrate's decision, after giving due regard to the district court's ruling. *McNelis v. McNelis*, 119 Idaho 349, 806 P.2d 442 (1991). If the magistrate's findings of fact are supported by substantial competent evidence, we will uphold those findings on appeal. *McNelis, supra*. As to issues of law, we exercise free review.

*Matter of Hanson*, 121 Idaho 507, 826 P.2d 468 (1992).

■ First, Koller argues that the Outfitters and Guides Act does not apply to "outfitting" which occurs on private land. The "Declaration of Policy" of the Act is set forth at I.C. § 36–2101 and states in part:

> The intent of this legislation is to promote and encourage residents and non-residents alike to participate in the enjoyment and use of the ... natural resources of Idaho, and the fish and game therein, and to that end *to regulate and license those persons who undertake for compensation to provide equipment and personal services to such persons,* for the explicit purpose of safeguarding the health, safety, welfare and freedom from injury or danger of such persons, in the exercise of the police power of this state. (Emphasis added.)

It is clear from the above language that the intent of this act is to regulate commercial outfitting. The State legislature, under the broad concept of police power, may enact laws concerning the health safety and welfare of the people so long as the regulations are not arbitrary or unreasonable. *Van Orden v. State Dept. of Health and Welfare*, 102 Idaho 663, 637 P.2d 1159 (1981). The regulation and licensing of outfitters is no different than those regulations concerning licensing for barbers or physicians which have been found to be valid. *See Gregersen v. Blume*, 113 Idaho 220, 223, 743 P.2d 88, 91 (Ct.App.1987) ("[T]he state may regulate the haircutting trade in order to protect public health and safety."); *State v. Kellogg*, 102 Idaho 628, 636 P.2d 750 (1981) (State has an interest in allowing only persons from accredited medical schools to apply for license to practice medicine.). Nothing in the Declaration of Policy or elsewhere in the Act indicates that the legislature intended to exempt the license requirement when the commercial outfitting occurs on private land. We conclude that the legislature intended to regulate commercial outfitting whether it occurs on public or private land and that such

regulation is a reasonable use of the legislature's police power.[1]

■ Next, Koller asserts that the Act violates his right to equal protection because a private land owner can engage in outfitting without a license so long as he does not charge for the service. However, the legislature's distinction between commercial and noncommercial outfitting is rationally related to its expressed objective of "safeguarding the health, safety, welfare and freedom" of individuals while in turn "promot[ing] and encourag[ing] residents and nonresidents alike to participate in the enjoyment and use" of Idaho's natural resources. I.C. § 36–2101. *See Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 711, 791 P.2d 1285, 1290 (1990) ("[T]he appropriate test to review a statute which impacts social or economic areas is the rational basis test which requires only that the statute 'advances legitimate legislative goals in a rational fashion.'") (*Citing Leliefeld v. Johnson*, 104 Idaho 357, 374, 659 P.2d 111, 128 (1983).) The Act's distinction between commercial and non-commercial outfitting does not violate the equal protection clause of the United States Constitution.

■ Koller also makes a rather unfocused due process argument suggesting that the Act is "under-inclusive" or "void for vagueness." However, to the extent that this due process claim is discernable, it is without merit. *See Bon Appetit Gourmet Foods v. State Dept. of Employment*, 117 Idaho 1002, 793 P.2d 675 (1989).

■ Finally, Koller argues that he was entrapped by the State into committing the crime. The trial court denied this claim, finding that "the activity of the state was a response to what the Defendant was openly undertaking to develop as a business...." Entrapment occurs when "an otherwise innocent person, not inclined to commit a criminal offense, is induced to do so by a State agent who, desiring grounds for prosecution, *originates the criminal design and implants in the mind of the innocent person the disposition to commit the alleged offense.*" *State v. Hansen*, 105 Idaho 816, 817 n. 1, 673 P.2d 416, 417 n. 1 (1983) (emphasis added). There was evidence that Koller placed advertisements in the newspaper soliciting hunters for guided deer hunts. Koller also drafted a brochure which he sent out which detailed the "guided hunts on private land for trophy mule deer." Based on this evidence, we affirm the trial court's finding of no entrapment.

The magistrate's judgment is affirmed.

JOHNSON and McDEVITT, JJ., and CAREY, J. Pro Tem., concur.

BISTLINE, Justice, concurring in part.

I concur in the majority view that judgment of conviction for outfitting without a license must be affirmed. Of the three issues defendant presents on appeal, the issue of entrapment is adequately discussed by the majority. Whether the Outfitters and Guides Act (the Act) applies to activities on private lands, and whether the Act is constitutional are issues which merit further discussion. A point of interest is the unnecessary killing of the deer, supposedly done to enhance the case against Koller, which the state was deliberately manufacturing after it became aware of his advertising.

The *entire* policy statement introducing the black letter law of the Act makes it abundantly clear that a primary legislative intent of the Act is to safeguard the health, safety, and welfare of the general public, both Idaho residents and nonresidents, whether on private land or public land being of no moment. Idaho Code § 36–2101, Declaration of policy states:

> The natural resources of the state of Idaho are an invaluable asset to every

---

1. Pursuant to I.C. § 36–2107(b), the Idaho Outfitters and Licensing Board has adopted rules "to carry into effect the provisions of this act...." Rule 16 of the Outfitters and Guides Licensing Board Rules and Regulations requires that a new outfitter's application provide the signatures of any private landowner whose land is to be used in the applicant's operation. The regulations clearly apply the Act to private property, and such application is entitled to great weight by this Court. *See J.R. Simplot Co., Inc. v. Idaho State Tax Comm'n*, 120 Idaho 849, 820 P.2d 1206 (1991).

community in which they abound. Every year, in rapidly increasing numbers, the inhabitants of the state of Idaho and nonresidents are enjoying the recreational value of Idaho's mountains, rivers and streams, many of which are far remote and removed from ordinary auto travel. The tourist trade is of vital importance to the state of Idaho, and the recreational value of these natural resources is such that the number of persons who are each year participating in their enjoyment is steadily increasing. *The intent of this legislation is* to promote and encourage residents and nonresidents alike to participate in the enjoyment and use of the mountains, rivers and streams of Idaho, and the fish and game therein, and to that end to regulate and license those persons who undertake for compensation to provide equipment or personal services to such persons, *for the explicit purpose of safeguarding the health, safety, welfare and freedom from injury or danger of such persons,* in the exercise of the police power of this state. It is not the intent of this legislation to interfere in any way with the business of livestock operations, nor to prevent the owner of pack animals from using same to accommodate friends where no consideration is involved for the use thereof, nor is it the intent of this legislation to interfere in any way with the right of the general public to enjoy the recreational value of Idaho's mountains, rivers and streams when the services of commercial outfitters and guides are not utilized, nor to interfere with the right of the United States to manage the public lands under its control.

(Emphasis added).

Idaho's fish and game abound in the deserts, fields, hills, mountains, rivers, streams, lakes and reservoirs of the state, whether these realms be privately or publicly owned. The public pursues the benefits of Idaho's wildlife and natural resources in hunting, fishing, camping, and other types of expeditions. These expeditions are not without dangers inherent in traversing difficult terrain and waterways, facing extremes of weather, and transport-

ing and using rifles, knives, and other necessary paraphernalia without due care. What is of some moment is that people who become involved are often unaware or inexperienced in coping with these dangers, and necessarily rely on licensed commercial outfitters and guides. Thus it has been legislatively deemed necessary that commercial outfitters and guides, who undertake such business for a monetary consideration, meet certain standards and be licensed accordingly. Such standards pertain to an outfitter's qualifications, training, experience, knowledge of governing rules and regulations, type of gear and equipment. By necessity of protecting the public, such standards and the licensing requirement apply to commercial outfitters and guides conducting expeditions on public as well as private lands.

Further, Idaho Code § 36–2110 provides:

2. The big game hunting area as set forth on the license shall be the limit of such operations for each licensee, subject to the subsection (b) below.

(b) The board may adjust the territorial scope of operations of any licensed outfitter or guide for reasons of game harvest, where territorial conflict exists between the big game operations of outfitters and guides, or for the safety of persons utilizing the services of outfitters and guides.

Thus, in addition to the aim of public safety, other aims of the Act are protection of Idaho's big game, by preventing abusive harvesting, and protection of the rights of other commercial outfitters, by efforts to prevent conflict. Both of these aims depend on the regulation of territories assigned to a licensee. It is readily inferable that in order to accomplish these aims, especially protection of the state's big game, the act must apply to territorial property whether or not it is comprised of private or public lands.

It is a well settled matter of law in Idaho that a state has the power to control the fish and game within its boundaries. This and other fundamental principles set forth in *Sherwood v. Stephens,* 13 Idaho 399, 90

P. 345 (1907), and still valid today, are germane to the case at bar.

> The wild game and fish within a state belong to the people in their collective capacity.... [I]t is within the police power of the legislature to enact such general laws as may be necessary for the protection and regulation of the public's right in such fish and game.... [O]wnership acquired in fish and game is not such an ownership as one acquires in chattels or lands, but is merely a qualified ownership, and that the possession of fish and game is at all times subject to such regulations as the legislature may see proper to make, subject to the provisions of the constitution.

*Sherwood,* 13 Idaho at 403–04, 90 P. at 346–47.

*Sherwood* stands for the above proposition that the state has the power to regulate fishing and hunting on public as well as private lands and that such police power is constitutional. *Sherwood,* 13 Idaho at 399, 90 P. at 345. Based on the state's intent to protect public health, safety and welfare and the wild fish and game within its limits, it is clear that the Outfitters and Guides Act requires that commercial outfitters be licensed to conduct hunting and fishing expeditions on private as well as public domains. Moreover, because the Act falls within the police power prerogative of the legislature, its enactment was not in violation of any person's constitutional rights, but, as per the statute and *Sherwood,* was the regulation of a resource belonging collectively to the people of the state and hence clearly within the state's purview.

Nevertheless, one is brought to wonder what was the reason for the Idaho undercover agent to shoot down the deer. Clearly the undercover agent by that time had assembled sufficient evidence, without a deer carcass, to substantiate a criminal complaint which charged performing services as an outfitter without having obtained a license. The state agent's case included: 1) newspaper advertisements for commercial outfitting placed by Koller; 2) Koller's draft brochures for commercial

outfitting services; 3) receipt or cancelled checks for the $2500 consideration paid by the undercover agent to Koller for commercial outfitting services; 4) Koller's videotape of the hunting expedition; and 5) and his personal knowledge that Koller, while acting in his capacity as a commercial outfitter, crossed the state line from Utah into Idaho, where the statute became effective.

In light of the foregoing, it appears that the killing of the animal was a senseless act. Unknown is whether that decision was the agent's or his supervisor's directive. Unfortunately, it was a contradiction to the state's avowed intent of conserving game.