924 P.2d 1230

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jose CANELO, Defendant–Appellant.**

**No. 21883.**

Court of Appeals of Idaho.

Oct. 17, 1996.

388

Jensen & Burr–Jones, Burley, for appellant. Kent D. Jensen argued.

Alan G. Lance, Attorney General; Michael A. Henderson, Deputy Attorney General, Boise, for respondent. Michael A. Henderson argued.

WALTERS, Chief Judge.

Jose R. Canelo was found guilty by a jury of delivery of a controlled substance, I.C. § 37–2732(a)(1)(A). On appeal, he claims that the trial court erred by: (1) denying his motion for a mistrial after the state failed to provide timely discovery of material evidence; (2) refusing to instruct the jury on the affirmative defenses of entrapment and duress; and (3) admitting evidence of other bad acts. For the reasons explained below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jose Canelo was indicted on one count of delivery of a controlled substance. I.C.

§ 37–2732(a)(1)(A). During the trial, Officer Scott S. Ward, of the Bureau of Narcotics of the Idaho Department of Law Enforcement, testified as follows. On April 19, 1994, he and Victor Payan, a paid confidential informant, drove in a truck to a house in Rupert, Idaho, where a drug transaction was to take place. Upon arriving at their destination, they parked at the front of the house and saw three men standing on the front porch. One of the men, later identified as Ramon Alfaro, approached the truck to speak to Payan, and Canelo and the third man entered the house. Shortly thereafter, Canelo came out of the house. As Canelo approached the truck, Payan got out and Canelo seated himself in the passenger seat. Payan remained next to the door on the passenger side of the truck in order to translate for Ward and Canelo because Ward did not speak Spanish. Canelo removed a bag of cocaine from his pocket and placed it on the seat, and Ward picked it up. They negotiated a price of $200, which Ward paid to Canelo. They then discussed the possibility of more transactions at $1000 per ounce for cocaine.

On cross-examination Ward explained that prior to this transaction, Payan entered into an oral agreement with the department whereby Payan was to be paid a fee for drug transactions completed by the department as a result of information or assistance provided by Payan. Ward further testified that Payan signed a document with the department which Ward referred to as a "CI Agreement." Ward explained that this document contained guidelines that informants were to follow when setting up drug buys for the state. When defense counsel inquired concerning the whereabouts of the CI Agreement, Ward stated that it was in a file at his office. Following a discussion off the record, the district court requested Ward to have a copy of the CI Agreement faxed to the court, and then recessed the jury in the meantime. After the copy was obtained, it was marked as an exhibit for the state.[1] Canelo then

1. This document is labelled "Confidential Agreement." It is executed by Ward and Payan, and contains Payan's initials opposite acknowledge- ment recitations such as "Do you understand that you are not privileged to break any laws during the course of your association with this

moved for a mistrial claiming that he had been prejudiced by the belated disclosure of the CI Agreement. The court ruled that although a copy of the document should have been provided to the defense through the normal course of discovery, insufficient prejudice existed to warrant a mistrial. The court then adjourned, giving Canelo the remainder of the afternoon as a continuance to review the document.

The jury later returned a verdict of guilty on the charge of delivery of a controlled substance. The court imposed a unified sentence of six years, with a two-year minimum period of confinement. Canelo has appealed from the judgment of conviction.

## II. DISCUSSION

### A. Motion for a Mistrial.

█ Canelo asserts that on November 29, 1994, he made a supplemental discovery request to the state, asking that the prosecutor's office supply him with a copy of the contract under which Payan worked for the Idaho Bureau of Narcotics. The state responded that no written contract existed. After learning of the CI Agreement during trial, the court directed the state to produce a copy of it for the defense. Canelo now argues that this information was vital to his efforts in attacking Payan's credibility in order to prove affirmative defenses of duress and entrapment. He contends that as a result of the state's failure to timely produce the CI Agreement, his right to due process was violated and the district court erred when it did not grant his motion for a mistrial.

█ In a criminal case a motion for a mistrial is governed by I.C.R. 29.1, which provides, in part, that "[a] mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial." I.C.R. 29.1(a); *State v. Araiza,* 124 Idaho 82, 94, 856 P.2d 872, 884 (1993).

The decision whether to grant a mistrial rests within the sound discretion of the district court and will not be disturbed on appeal absent an abuse of discretion. *State v. Tolman,* 121 Idaho 899, 902, 828 P.2d 1304, 1307 (1992); *State v. Atkinson,* 124 Idaho 816, 818, 864 P.2d 654, 656 (Ct.App.1993). This Court has held that the question on review is not whether the trial court reasonably exercised its discretion under the circumstances existing when the motion was made. Rather, the question is whether the event or events which brought about the motion for mistrial constitute reversible error when viewed in the context of the entire record. *Atkinson, supra; State v. Urquhart,* 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App.1983).

█ Here, because Canelo failed to show any prejudice from the belated disclosure of the CI Agreement at the time he moved for a mistrial, the district court chose to provide Canelo with a continuance rather than grant the mistrial motion. In this respect, the decision to grant or to deny a continuance also rests within the sound discretion of the trial court. *State v. Cagle,* 126 Idaho 794, 797, 891 P.2d 1054, 1057 (Ct.App. 1995). Where the late disclosure or discovery of evidence forms the basis for a request for relief, the alleged tardiness of the disclosure must be shown to have been so prejudicial to the defendant's preparation of his or her case that a fair trial was denied. I.C.R. 16; *State v. Tapia,* 127 Idaho 249, 255, 899 P.2d 959, 965 (1995); *State v. Hansen,* 108 Idaho 902, 904, 702 P.2d 1362, 1364 (Ct.App. 1985). To prove prejudice, a defendant must show there is a reasonable probability that, but for the late disclosure of evidence, the result of the proceeding would have been different. *Tapia, supra.*

After the district court received the CI Agreement by fax, a copy was provided to Canelo. The court then granted a continuance so Canelo could review the document. Once the trial was reconvened, Canelo had the opportunity to cross-examine Ward and Payan regarding the CI Agreement. The

---

Bureau?" "Do you understand you are not an employee of the State of Idaho?" "Do you understand that you are not to use your association with this Bureau to resolve personal matters?" and "Do you understand that you are not to carry a firearm?"

record shows that Canelo never made a request for additional time to review the document, moved again for a mistrial or asserted further that he had suffered prejudice. Canelo has failed to demonstrate any prejudice from the late disclosure of this document. Furthermore, the option chosen by the district court—affording Canelo a continuance as an alternative to a mistrial in the absence of a showing of prejudice—was the less radical solution and was a reasonable choice under the circumstances.

We therefore conclude that the district court did not abuse its discretion in denying Canelo's motion for a mistrial based on the belated delivery of the CI Agreement.

## B. Affirmative Defenses of Duress and Entrapment.

Next, Canelo claims that the district court erred in refusing to instruct the jury on the affirmative defenses of duress and entrapment.

Canelo testified to a much different scenario than did Ward. According to Canelo, he and Payan had a major disagreement in November of 1994, over a woman. Canelo claimed that Payan threatened him with bodily harm and he thereafter avoided Payan out of fear. Canelo also explained that during the winter months of 1994, he accepted Angel Abdon's invitation to move into the house in Rupert where the drug transaction at issue in this case later occurred. In addition to Abdon, Guillermo Vellez and Ramon Alfaro lived at this residence. Canelo stated that after two months, he learned that Abdon, Vellez and Alfaro were involved in drug trafficking. He explained that he ceased receiving unemployment benefits during this time, and could not pay his rent. As a consequence, Vellez and Alfaro started pressuring him to sell drugs. Canelo testified that Payan came to their house frequently to purchase drugs, and that it was during these visits that he learned Payan still wanted to harm him.

Canelo related that on April 19, 1994, he was inside of the house watching television when Ward and Payan arrived. He became aware of Payan's presence only after Vellez and Alfaro had told him to deliver the cocaine to Ward. Canelo testified that to avoid problems with Alfaro and Payan, he conducted the transaction as ordered. He claimed that he did not make any money from the transaction and that he did not converse with either Payan or Ward about future drug sales. Canelo denied involvement in any drug deals prior to this event.

### 1. Duress.

█ Canelo claims that his testimony supplied the jury with facts which were sufficient to establish that he was coerced and under duress when he delivered the cocaine to Ward. Referring to his inability to pay rent because his unemployment benefits ceased, Canelo testified:

Q: What did Mr. Vallez do when you didn't pay rent?

A: Various times he wanted to beat me up.

Q: Did he tell you to sell drugs?

A: Yes. Various times.

Q: Did Ramon tell you you had to sell drugs?

A: He wanted me to do it and help him.

Q: Did you sell any drugs?

A: No.

He also described his involvement in the sale to Ward, commencing with Ward and Payan's arrival at Canelo's residence:

Q: What did Ramon do at that point?

A: He talked to Gillermo [Vellez] and then he went out, and then he made me deliver those drugs that I delivered to the officer.

Q: How did he make you deliver those drugs?

A: Insisting on various times, him and Gillermo.

Q: What do you feel would have happened to you had you refused?

A: Well, Victor was there and Mr. Gillermo [sic] was there and I was afraid of them because none of them liked me.

Q: Did you feel that they would have caused you physical harm?

A: Yes, I felt bad at that moment.

Q: Was that based on your previous experience with Victor and Mr. Vellez?

A: Yes.

Canelo submits that a reasonable view of this evidence justified an instruction to the jury on the defense of duress.

■ The question of whether a jury was properly instructed is a question of law over which this Court exercises free review. *State v. Jones,* 125 Idaho 477, 489, 873 P.2d 122, 134 (1994); *State v. Carsner,* 126 Idaho 911, 914, 894 P.2d 144, 147 (Ct.App.1995). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Johnson,* 126 Idaho 892, 895, 894 P.2d 125, 128 (1995); *State v. Bowman,* 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct.App.1993). Requested jury instructions should not be given if they lack support in the facts of the case or are erroneous statements of the law. *State v. Babb,* 125 Idaho 934, 941, 877 P.2d 905, 912 (1994); *State v. Bronnenberg,* 124 Idaho 67, 71, 856 P.2d 104, 108 (Ct.App.1993).

Little case law exists on the defense of duress in Idaho. However, I.C. § 18–201(4) codifies the basic tenets of this defense and provides that all persons are capable of committing crimes except "[p]ersons (unless the crime be punishable by death) who committed the act or made the omission charged, under threats or menaces sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused." *See also State v. Kopsa,* 126 Idaho 512, 520, 887 P.2d 57, 65 (Ct.App.1994).

Given the record before us, Canelo has not met his burden of showing that the facts supported a jury instruction for duress. The record is devoid of any explanation as to how Alfaro pressured or "obligated" Canelo to sell drugs to Ward. The only incident of a possible threat to which Canelo testified occurred between Canelo and Payan early in 1994, and this incident was supposedly over a woman, not drugs. Canelo has not shown that he sold the cocaine under any type of threat, nor has he shown that he reasonably believed his life would be endangered if he refused to participate in the transaction. The facts of this case reasonably support the

trial court's grounds for denying the requested instruction.

**2. Entrapment.**

■ We turn next to Canelo's requested instruction on the defense of entrapment. The background for this request is as follows. During the April 19th transaction, Ward wore a wire which recorded conversations. Because the majority of the conversations on tape were in Spanish, the defense had the tape translated by an interpreter, and the written translation was entered as an exhibit by the defense. The recording was of poor quality, and only fragments of the conversation could be heard and translated by the interpreter. The translation contains the statement, "Let's see if we can set the trap." Canelo alleges that the statement was made in the conversation between Payan and Ramon Alfaro when Alfaro approached Ward's truck prior to Canelo's delivery of the cocaine. Canelo claims that this statement shows that Payan and Alfaro conspired to entrap him. He also asserts that a statement by Alfaro, "Cut me some slack, because I don't want to get involved," indicates that Alfaro did not want to participate in the April 19th transaction. Canelo argues that because Payan's sole purpose in working for the state was to produce people for drug convictions, the relationship between the state and Payan was governed by agency law. He further contends that by prosecuting him, the state has ratified Payan's acts and, consequently, must be held accountable for Payan's use of Alfaro to intimidate and threaten Canelo into delivering the cocaine.

■ A defendant cannot be convicted of a crime he was entrapped into committing. *State v. Mata,* 106 Idaho 184, 186, 677 P.2d 497, 499 (Ct.App.1984). The entrapment defense is a creature of common law, and it occurs when an otherwise innocent person, not inclined to commit a criminal offense, is induced to do so by a government agent who, desiring grounds for prosecution, originates the criminal design and implants in the mind of the innocent person the disposition to commit the alleged offense. *State v. Koller,* 122 Idaho 409, 411, 835 P.2d 644, 646 (1992);

*State v. Hansen,* 105 Idaho 816, 817 n. 1, 673 P.2d 416, 417 n. 1 (1983); *Kopsa,* 126 Idaho at 519, 887 P.2d at 64; *Mata,* 106 Idaho at 185–86, 677 P.2d at 498–99. There is a distinction between originating the idea for an offense and merely furnishing the opportunity to commit it. *Kopsa, supra.* The latter is not entrapment; rather, it is a legitimate method of ferreting out crime. *Id.* This principle invites a narrow focus upon the defendant's subjective state of mind. *Mata,* 106 Idaho at 186, 677 P.2d at 499. Moreover, because it links entrapment with proof of the elements of an offense, the subjective test implicitly treats entrapment as a question for the jury. *Id.*

To prevail on appeal, Canelo must show that there is a reasonable view of the evidence presented that would support the theory of entrapment. When asked about the statement to set a trap on cross-examination, Payan first responded that "We [Payan and Alfaro] never mentioned anything like that [setting a trap]. We were just joking around a little." Upon further inquiry, Payan testified that Alfaro never said anything to him about setting a trap, nor did Alfaro tell Payan that he did not want to get involved. When asked about the statement in the transcript, "Ramon [Alfaro], you got to do it," Payan explained that the translation was wrong and that the actual statement he made to Alfaro was, "How are you doing." Based on the record, the district court's explanation as to why it rejected the proposed instruction is accurate:

> In order for Instruction No. 16[,] entrapment[,] to be applicable, ... the person that Payan talked to [Alfaro] would have had to become an agent of the state of Idaho, and I find as a matter of law that person did not become the agent for the state of Idaho. And the mere fact that the word trap was used does not create an entrapment defense ... I rule as a matter of law that the defense of entrapment has not been raised to a sufficient level to justify submitting it to the jury.

The district court determined because there was insufficient evidence upon which the jury could find Alfaro was an agent of the state, that an instruction on entrapment was not warranted. We agree. The conversation fragment in Canelo's translation of the tape is insufficient to make a prima facie showing that Payan and Alfaro conspired together to induce Canelo to deliver the drugs and that Alfaro thus became an agent of the state for purposes of an entrapment defense. The transcript contains no other mention of any "trap." There is no evidence of what the referenced "trap" was or evidence that Canelo was the target. The only point in the transcript where Canelo's name arguably is even mentioned is the final statement in which Payan says, "Ask for Ramon or Jose." Even assuming that Alfaro pressured Canelo to deliver the drugs, as Canelo maintains, there is simply no evidence that he did so at Payan's urging or otherwise as an agent of the state. We hold that the district court properly denied Canelo's proposed jury instructions on duress and entrapment because the instructions were not supported by the evidence.

### C. I.R.E. 404(b)—Other Bad Acts.

During the state's case-in-chief, Ward was questioned on redirect examination about a cocaine purchase that allegedly had taken place between himself, Payan and Canelo on another occasion. The district court overruled Canelo's relevancy objection to the state's introduction of evidence concerning that transaction. Canelo asserts that the court erred in admitting this evidence, arguing that the evidence cannot be used to establish identity for the April 19th drug transaction because the other transaction occurred after April 19. Canelo also contends that the evidence was not relevant to a material issue of the crime charged, nor did its probative value outweigh its prejudicial effect.

The state argues that this evidence is admissible because it was relevant to the issues disputed at trial, including motive, and its probative value outweighs any prejudicial effect to Canelo. The state also asserts that even if the second drug deal took place after the April transaction, the information was properly admitted pursuant to *State v. Tolman,* 121 Idaho 899, 905–06, 828 P.2d 1304, 1310–11 (1992) (evidence of subsequent misconduct is not per se inadmissible; threshold

question regarding admissibility of evidence of other crimes is relevancy).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. I.R.E. 404(b). It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*

 In order for the prosecution to use evidence of other crimes or bad acts, the requirements of a two-tiered test must be satisfied. I.R.E. 403; *State v. Arledge,* 119 Idaho 584, 588, 808 P.2d 1329, 1333 (1991). First, the state must show that the evidence is relevant to a material issue concerning the crime charged. Second, and only if the evidence is deemed relevant, it must be determined whether the probative value of the evidence is outweighed by the unfair prejudice to the defendant. *Tapia,* 127 Idaho at 254, 899 P.2d at 964; *State v. Marks,* 120 Idaho 727, 731, 819 P.2d 581, 585 (Ct.App. 1991). Whether evidence is relevant is an issue of law. *Atkinson,* 124 Idaho at 819, 864 P.2d at 657. Therefore, when considering a trial court's admission of evidence of prior misconduct, we exercise free review of the trial judge's admissibility determination under I.R.E. 404(b). *Id.* However, when reviewing the determination that the probative value of the evidence is not outweighed by unfair prejudice, the second step of the analysis, we use an abuse of discretion standard. *State v. Rhoades,* 119 Idaho 594, 603, 809 P.2d 455, 464 (1991); *Atkinson, supra.*

 Under the approach outlined above, our first task is to determine whether evidence of the alleged second transaction was admissible under I.R.E. 404(b). The evidence complained of was not brought out on direct examination. Rather, during Canelo's cross-examination of Ward, a witness for the state, Canelo began laying the foundation for his attempted entrapment defense. On redirect, the state introduced evidence of a second drug transaction with the following interrogation of Ward:

Q. Scott [Ward], was April 19th, 1994 the first date you'd ever met Jose Canelo?

A. No, it's not.

Q. How was it that you had met him prior to that occasion?

A. I met him in Jerome County at the Greenwood gas station, just off Interstate 84.

Q. When was that, do you know?

A. It was, I believe, in May.

Q. And who else was present at this meeting?

A. Myself, Mr. Canelo, and Victor Payan.

Q. And what was the purpose of that meeting?

A. To purchase a quarter ounce of cocaine.

Q. Did you arrest Mr. Canelo at that time?

A. No, I did not.

Q. Why not?

. . . .

A. I didn't arrest him at that time so we could continue to investigate Mr. Canelo. . . .

It is clear that Ward's testimony conflicts with itself. Ward testified that he met Canelo for the first time *prior* to the April 19, 1994, transaction, but in "May." However, he does not provide a year. It does not appear that Ward could have been referring to May of 1993, because he also testified that he first met Payan in March, 1994, when Payan signed the CI Agreement and became an informant for the Bureau. Furthermore, Payan later testified that Canelo knew Ward before April 19, from a previous drug transaction which occurred "two weeks before that [April 19, 1994, transaction]." It is evident that the transaction to which Ward refers occurred with Canelo either late in March or early in April of 1994 and that the reference in the transcript to "May" was either an inadvertent statement by Ward or a transcription error. The record does not support a conclusion that Ward could have been referring to a drug transaction occurring in May of 1994.

With this determination made, we reject Canelo's argument that the alleged "May" transaction was introduced in an improper attempt to establish identity for the April

drug transaction. The state introduced the prior transaction evidence on redirect *after* Canelo had laid foundation for his affirmative defense of entrapment, in order to rebut Canelo's apparent entrapment theory by showing that Canelo had, on at least one prior occasion, sold cocaine to Ward. Furthermore, evidence of the prior transaction between Ward and Canelo was not offered to show Canelo's propensity to engage in the crime charged, but rather it was relevant to show that Canelo was disposed to sell the cocaine prior to the April 19 transaction.

We next determine the second prong of the analysis by reviewing whether the probative value of the "prior" transaction outweighed any potential unfair prejudice. While Ward's testimony certainly bolsters the state's position, we do not believe that it was inflammatory or otherwise unfairly prejudicial such that it would lead a jury to find Canelo guilty regardless of other facts presented. The district court did not abuse its discretion in holding that the probative value of this evidence outweighed any unfair prejudice that it may have caused.

We conclude that the district court did not err in admitting evidence of the prior drug transaction between Ward, Payan and Canelo because it was relevant to the state's re-buttal of Canelo's affirmative defense of entrapment. Furthermore, we hold that this evidence was relevant to prove Canelo's motive or intent.

## III. CONCLUSION

The district court did not abuse its discretion in denying Canelo's motion for a mistrial based on the belated delivery of the CI Agreement because Canelo did not experience any prejudice. The court did not err in denying Canelo's proposed jury instructions for duress and entrapment because sufficient evidence did not exist to warrant them. Finally, the district court properly admitted evidence of a "prior" transaction because it was relevant to disprove Canelo's entrapment theory and to prove motive or intent pursuant to I.R.E. 404(b).

The judgment of conviction is affirmed.

LANSING and PERRY, JJ., concur.