69 P.3d 188

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Aaron Michael INGRAM, Defendant–Appellant.**

**No. 27483.**

Court of Appeals of Idaho.

March 25, 2003.

Review Denied May 16, 2003.

Craig Harrison Durham, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Chief Judge.

Aaron Michael Ingram appeals from the judgment of conviction entered after a jury found him guilty of trafficking in methamphetamine, conspiracy to traffic in methamphetamine, and two counts of delivery of methamphetamine. He challenges the trial court's admission of several hearsay statements and the court's refusal to give a jury instruction on the defense of entrapment.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the State's evidence at trial, on October 27, 2000, undercover detective Beth Bradbury of the Idaho State Police, acting upon information provided by an informant, telephoned Andrea Provost at the Star Motel and inquired about buying an eighth of an ounce of methamphetamine. Upon arriving at the motel, Bradbury went to room three, which she had been told was the room that Provost was occupying. Ingram answered the door at room three and told Bradbury that Provost was in room five. Bradbury then found Provost in room five and paid her $200 for an eighth of an ounce of methamphetamine. Bradbury asked Provost about the man who had answered the door in room three, and Provost responded that he was her boyfriend. Provost also told Bradbury that, for future transactions, she could be reached by telephone at room three.

On October 31, 2000, Bradbury again telephoned Provost and arranged to buy another eighth of an ounce of methamphetamine. Bradbury met with Provost at the motel, but could not complete the purchase at that time. Provost said that Ingram had gone to a storage unit and would be back in half an hour, and that Bradbury should return then. Bradbury asked Provost about the methamphetamine she would be buying that day, saying that she wanted some of the "white stuff" as opposed to the tan colored methamphetamine she had purchased the first time. Provost said Bradbury would receive the white stuff because it was "our product," not someone else's as the tan product had been. When Bradbury returned to the mo-

tel a half hour later, Ingram was in room three with Provost. Bradbury again gave Provost $200 for an eighth of an ounce of methamphetamine. Bradbury then remarked on how white the product was and asked which process was used to make it. Ingram responded, saying that it was processed using lithium. When Bradbury asked about the possibility of buying a half-ounce of methamphetamine rather than an eighth, Ingram said that he and Provost could supply it for $600.

On November 3 and November 6, police officers conducted surveillance on a storage facility in Coeur d'Alene. The officers saw Ingram and Provost moving items at two storage units. The officers detected the odor of a methamphetamine lab emanating from one of the units.

Detective Bradbury telephoned Provost once again on November 6 and arranged to purchase more methamphetamine. She met with Provost and Ingram at the motel and paid $400 for a quarter of an ounce of methamphetamine. Bradbury then asked Ingram about buying an ounce the next day, and Ingram said that he could acquire it and would sell it for $1,000. The next day, on November 7, 2000, the police executed a search warrant at the two storage units where they had previously observed Provost and Ingram. Inside one unit the police discovered a methamphetamine lab, including ingredients, supplies, and the product in various stages of completion.

The State charged Ingram with one count of trafficking in methamphetamine, Idaho Code § 37–2732B(a)(4); one count of conspiracy to traffic in methamphetamine, I.C. §§ 18–1701, 37–2732B, and three counts of delivery of a controlled substance, I.C. § 37–2732(a). A jury found Ingram guilty of trafficking, conspiracy, and two counts of delivery. Ingram now appeals.

## II.

## ANALYSIS

### A. Provost's Out–of–Court Statements

Provost did not testify at trial, but the State sought to introduce Detective Brad-

bury's testimony about statements that Provost had made to Bradbury. Ingram objected to the introduction of Provost's statements made during the drug exchanges on October 27 and 31 on the grounds that the statements were hearsay. The trial court overruled the objection, reasoning that Provost made the statements as a co-conspirator of Ingram and therefore, by terms of Idaho Rules of Evidence 801(d)(2)(E), the statements were not hearsay.

Ingram contends that this ruling was erroneous because the statements were not made during the course of the conspiracy that was alleged in the information. The conspiracy count of the information referred only to a conspiracy existing on November 6 and 7. According to Ingram, if the charged conspiracy did not yet exist, the statements made by Provost on October 27 and 31 could not have been made during the course of the conspiracy. He further contends that the evidence does not support a finding that there was any conspiracy between Provost and Ingram when Bradbury engaged in the first two drug transactions with Provost in October.

■■■ Under I.R.E. 801(d)(2)(E), statements offered against a party are not hearsay if they are made "by a co-conspirator of a party during the course and in furtherance of the conspiracy." Evidence of statements made by co-conspirators is admissible if there is some evidence of the conspiracy or promise of its production. *State v. Jones,* 125 Idaho 477, 485, 873 P.2d 122, 130 (1994); *State v. Hoffman,* 123 Idaho 638, 642, 851 P.2d 934, 938 (1993). A trial court's admission of co-conspirator statements will not be disturbed on appeal so long as there is sufficient evidence from which a trial court may reasonably infer the existence of a conspiracy. *Jones,* 125 Idaho at 485, 873 P.2d at 130; *Hoffman,* 123 Idaho at 642, 851 P.2d at 938; *State v. Brooks,* 103 Idaho 892, 901, 655 P.2d 99, 108 (Ct.App.1982).

■■ We first address Ingram's claim that the evidence was inadmissible because the challenged statements were made to Bradbury prior to the time frame of the conspiracy charged in the information. Ingram's argument is without merit. This Court has noted that it is not necessary that the State even make a formal charge of conspiracy before the co-conspirator exception may apply. *Brooks,* 103 Idaho at 901, 655 P.2d at 108. Other jurisdictions are in accord. *See United States v. Marino,* 277 F.3d 11, 25–26 (1st Cir.2002) (another conspiracy, larger than the one charged at trial, may provide the basis for the admission of the co-conspirator's statements); *United States v. Bowe,* 221 F.3d 1183, 1193 (11th Cir.2000) (the conspiracy that forms the basis for admitting a co-conspirator's out-of-court statements need not be the same conspiracy for which the defendant is charged); *United States v. Lara,* 181 F.3d 183, 196 (1st Cir.1999) (out-of-court statements of a co-conspirator which are made in furtherance of a conspiracy are admissible regardless of whether the conspiracy furthered is charged or uncharged); *United States v. Gigante,* 166 F.3d 75, 82 (2nd Cir.1999) (the conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged in the indictment); *United States v. Godinez,* 110 F.3d 448, 454 (7th Cir.1997) (the government need not even charge a conspiracy in order for a co-conspirator statement to be admitted). Accordingly, the dates of the conspiracy chosen by the State in the information are not dispositive of the issue of when the conspiracy existed. The State need show only that the proffered out-of-court statements were made during the course and in the furtherance of a conspiracy that existed when the statements were made.

This leads us to Ingram's next contention, that there was insufficient evidence that a conspiracy between Provost and Ingram existed on October 27 and 31. In making the preliminary determination of the existence of a conspiracy for purposes of application of Rule 801(d)(2)(E), a trial court may consider evidence that is inadmissible under the rules or has not yet been demonstrated to be admissible. I.R.E. 104(a). *See also Bourjaily v. United States,* 483 U.S. 171, 181, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144, 156 (1987) (a court, in making a preliminary factual determination under Federal Rule of Evidence 801(d)(2)(E), may examine the hearsay statement sought to be admitted); *Gigante,*

166 F.3d at 82 (the hearsay statement itself may be considered in establishing the existence of a conspiracy).

■ Here, there is ample evidence that Ingram was engaged in a criminal conspiracy with Provost. Ingram was not only present during the drug buys on October 31 and November 6 but was personally involved in the transactions. On October 31 he quoted prices to Detective Bradbury and explained to her the process used to produce the methamphetamine. On November 6, when Bradbury asked about buying a larger quantity of methamphetamine, Ingram said he could obtain that amount and he specified the price. During surveillance on November 3 and 6, officers observed both Provost and Ingram at the storage unit containing the methamphetamine lab.

■ There was also sufficient evidence to support a finding that the conspiracy dated back to October 27 even though Ingram did not participate in the initial drug transaction on that date. The State's offer of proof included evidence that on October 27, during the initial telephone conversation between Bradbury and Provost, Provost said she could not deliver the methamphetamine at that moment because "we are locked out of our storage unit." It is reasonable to infer that the persons in control of the storage unit to whom Provost was referring on October 27 included Ingram, who was using the unit four days later. This inference is further supported by Ingram's presence on October 27 in the motel room to which Bradbury had been directed by Provost for the purpose of completing a drug transaction. Full evidence of the conspiracy had not yet been presented when the court admitted Bradbury's testimony about Provost's October 27 and 31 statements, but admission of the testimony was not for that reason erroneous. "[I]t is discretionary with the trial court to admit proof of declarations and acts of other coconspirators before proof of conspiracy, and . . . the subsequent connecting of the one on trial with the conspiracy and crime is sufficient." *State v. So*, 71 Idaho 324, 329, 231 P.2d 734, 737 (1951). *See also Brooks*, 103 Idaho at 901, 655 P.2d at 108. There was thus no error in the admission of Provost's October 27 and 31 comments as statements of a co-conspirator.

■ Ingram also contends that the admission of Provost's statements violated his rights under the Confrontation Clause of the Sixth Amendment. This argument is without merit. The United States Supreme Court has "attempted to harmonize the goal of the [Confrontation] Clause—placing limits on the kind of evidence that may be received against a defendant—with a societal interest in accurate factfinding, which may require consideration of out-of-court statements." *Bourjaily*, 483 U.S. at 182, 107 S.Ct. at 2782, 97 L.Ed.2d at 157. In so doing, the Court has held that the co-conspirator provision of the hearsay rule under the Federal Rules of Evidence, which is identical to the Idaho rule, does not violate the Confrontation Clause because it is "firmly enough rooted in our jurisprudence that . . . a court need not independently inquire into the reliability of such statements." *Id.* at 183, 107 S.Ct. at 2782, 97 L.Ed.2d at 157. Accordingly, the admission of Provost's out-of-court statements into evidence did not violate Ingram's rights under the Confrontation Clause.

## B. Entrapment Instruction

At the close of the evidence, Ingram requested that the trial court instruct the jury on the defense of entrapment, but the court refused the instruction. Ingram contends that this refusal was error. He asserts that the solicitation of drugs by Detective Bradbury constitutes entrapment because it started the chain of events that led to Ingram manufacturing and assisting in delivery of the drugs to satisfy Bradbury's increasing demands. Ingram alleges that there was no evidence that he was predisposed to committing these crimes and, therefore, the defense should have been submitted to the jury.

■ Whether a jury was properly instructed is a question of law over which this Court exercises free review. *State v. Canelo*, 129 Idaho 386, 391, 924 P.2d 1230, 1235 (Ct. App.1996). "Requested jury instructions should not be given if they lack support in the facts of the case or are erroneous statements of the law." *Id.* Accordingly, in order

to prevail on his claim of error, the appellant "must show that there is a reasonable view of the evidence presented that would support the theory of entrapment." *Id.* at 392, 924 P.2d at 1236.

Entrapment occurs when an otherwise innocent person, not inclined to commit a criminal offense, is induced to do so by a state agent who, desiring grounds for prosecution, originates the criminal design and implants in the mind of the innocent person the disposition to commit the alleged offense. *Canelo,* 129 Idaho at 391, 924 P.2d at 1235; *State v. Kopsa,* 126 Idaho 512, 519, 887 P.2d 57, 64 (Ct.App.1994); *State v. Mata,* 106 Idaho 184, 185–86, 677 P.2d 497, 498–99 (Ct. App.1984). There is a distinction however, between originating the idea to commit the crime and merely furnishing the opportunity to commit it. Furnishing the opportunity is not entrapment but, rather, a legitimate means to ferret out crime. *Canelo,* 129 Idaho at 392, 924 P.2d at 1236; *Kopsa,* 126 Idaho at 519, 887 P.2d at 64. As the Idaho Supreme Court held in *State v. Webster,* 46 Idaho 798, 800, 271 P. 578, 578 (1928), a case involving the sale of liquor by a bootlegger to undercover agents:

> The evidence showed no more than that appellant was given an opportunity to either violate the law or to refuse to do so, which does not constitute entrapment. There being no evidence of entrapment,

there was no necessity for the proposed instruction.

Here, there was no evidence of undue influence, compulsion, or persuasion from Detective Bradbury. She merely presented Ingram with an opportunity to violate the law. On this evidentiary record, Ingram could not reasonably be found to be an "otherwise innocent person" not inclined to commit the offense. Therefore, the trial court correctly refused the proposed instruction on entrapment.

### III.

### CONCLUSION

The trial court properly admitted evidence of Provost's out-of-court statements because there was sufficient evidence of the existence of a conspiracy between Provost and Ingram when the statements were made. The trial court also correctly refused to instruct the jury on the defense of entrapment. Accordingly, the judgment of conviction is affirmed.

Judge PERRY and Judge GUTIERREZ concur.