IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38271

| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 503 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed:  May 31, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DOUGLAS JAMAL HAMBRICK, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Ronald J. Wilper, District Judge.

Judgment of conviction for trafficking in cocaine, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Douglas Jamal Hambrick appeals from his judgment of conviction entered upon a jury verdict finding him guilty of trafficking in cocaine.  For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Detective Coy Bruner of the Boise Police Department used a confidential informant to attempt to set up a controlled buy of 1/2 ounce of cocaine from Hambrick.  Hambrick rejected the initial request, however, insisting he would only sell a full ounce and suggesting the informant pool his resources with a friend.  Upon direction from Detective Bruner, the informant agreed to buy a full ounce, and Detective Jason Harmon of the Boise Police Department accompanied the informant, posing as the informant's friend and fellow buyer.

The informant and Detective Harmon picked up Hambrick in a drug store parking lot and were directed by Hambrick to a nearby apartment complex.  While en route, the vehicle was

pulled over by a Boise police officer according to a pre-arranged plan to positively identify Hambrick. Upon arriving at the apartment complex parking lot, Hambrick exited the vehicle and told the informant and Detective Harmon to wait while he met his cocaine source. Hambrick returned approximately five minutes later with the cocaine, which he delivered in exchange for $900. During the exchange, Hambrick assured Detective Harmon "the weight was right." After Hambrick left, Detective Harmon conducted a field test on the cocaine, which required him to destroy a small amount of the drug.

Hambrick was arrested and charged with trafficking in cocaine, Idaho Code § 37-2732B(a)(2)(A), which required the State to show Hambrick actually delivered at least 28 grams of cocaine[1] or that he represented it as at least 28 grams. At trial, a technician from the State laboratory testified the cocaine weighed 27.99 grams. Following the close of evidence, Hambrick requested the jury be instructed as to entrapment, which the district court denied. The jury found Hambrick guilty of trafficking in cocaine. Hambrick now appeals.

## II.

## ANALYSIS

Hambrick contends the evidence was insufficient to support the jury's verdict; specifically, he argues the evidence was insufficient to support a finding that the actual weight of the cocaine was at least 28 grams or that he had represented it as weighing as much. He also contends the district court erred in allowing Detective Harmon to testify as to his opinion concerning how much cocaine he used to conduct the field test. Finally, Hambrick argues the district court erred in denying his request that the jury be instructed as to entrapment.

### A.     Sufficiency of the Evidence

Hambrick contends the State failed to present sufficient evidence to establish beyond a reasonable doubt that he trafficked in cocaine. Specifically, he argues that while the evidence supported a conviction for delivery of a controlled substance, a conviction for trafficking in cocaine could only have been based on conjecture or speculation because there was insufficient evidence to support a conviction based on the actual weight or the represented weight of the drugs. Further, Hambrick contends that even if the evidence was sufficient to support a guilty verdict on one basis, he is nonetheless entitled to a new trial.

---

[1]     An ounce is equivalent to 28.3495231 grams.

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

Pursuant to Idaho Code § 37-2732B(a)(2), any person who knowingly manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of 28 grams or more of cocaine is guilty of trafficking in cocaine. Further, the statute provides that "the weight of the controlled substance as represented by the person selling or delivering . . . is determinative if the weight as represented is greater than the actual weight . . . ." I.C. § 37-2732B(c). Thus, a person may be convicted of trafficking in cocaine based on either the actual weight of the cocaine or the weight as represented if greater than the actual weight. *See State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000).

Here, the State pursued a conviction on both theories, arguing Hambrick was guilty both because the actual weight of the cocaine was 28 grams or more and because Hambrick represented to the informant on the phone he would sell him an ounce and reassured the undercover detective when the buy was taking place that the "weight was right." On appeal, Hambrick argues the evidence was insufficient to sustain a conviction on either basis.

In regard to the represented weight, Hambrick contends the State failed to produce any evidence that Hambrick ever used the term "ounce" or its equivalent[2] when referencing the drugs sold to the informant. Hambrick argues the only statement attributable to him regarding the

---

[2]    Detective Coy Bruner testified at trial that "ounce" is "not terminology that's consistent with people that deal dope or drugs." He testified those involved in drug trafficking use equivalent terminology such as "an 'O' or a 'zip' or a 'full one,' something to that extent."

weight of the cocaine was Detective Harmon's testimony that, upon returning to the vehicle with the cocaine, Hambrick had "assured [the detective] that the weight was right." Hambrick contends that because Detective Harmon never testified that the detective or the informant asked Hambrick if the cocaine delivered was an ounce or the equivalent, Hambrick's statement regarding the weight being "right" was "without sufficient context from which to infer that Mr. Hambrick was representing the cocaine to weigh an ounce." Therefore, Hambrick contends the jury's verdict was necessarily based on speculation as to what Hambrick meant when he purportedly stated the "weight was right" and was not sufficient evidence to support a guilty verdict.

This dispute largely arises from the somewhat disparate testimony of the detectives as to Hambrick's statements when he was in the vehicle delivering the cocaine and the fact that although the tape of the interaction was introduced into evidence, during a significant portion of time the audio was indecipherable. At trial, Detective Bruner, who was listening to the transaction occur over the wire in the apartment complex parking lot, testified that Detective Harmon asked whether the weight was correct and if it was, in fact, an ounce and Hambrick responded that he had weighed the cocaine himself and assured him it was an ounce. Detective Bruner read a portion from his police report,[3] which he stated he had written the afternoon or evening of the drug buy:

> I wrote that Mr. Hambrick got back into the vehicle with Detective Harmon and delivered an ounce of cocaine to Detective Harmon, during which time Mr. Hambrick assured Detective Harmon it was an ounce of cocaine.

On direct examination, when asked whether Hambrick said anything to him once he returned to the car with the cocaine, Detective Harmon testified, "He assured me that the weight was right, and actually told me to squeeze it and to feel that it's chunky, and referencing the quality of it." The following exchange then occurred on cross-examination concerning the conversation with Hambrick after he delivered the cocaine:

[Defense counsel:]    In fact, [Hambrick] never even used the word "ounce" to you. Right?

[Detective Harmon:]    You know, all I remember asking is, "Is the weight good?" But I was there to do an ounce of cocaine deal.

---

[3]      The report itself was not admitted into evidence.

4

[Defense counsel:] But what I'm asking you is: Did he ever use the word "ounce" to you?

[Detective Harmon:] I don't recall.

The two then discussed Detective Harmon's testimony to the grand jury covering his discussion with Hambrick regarding the weight of the cocaine:

[Defense counsel:] There was a discussion with you and [the grand jury prosecutor] . . . concerning whether or not a specific weight or term was used. Would you agree?

[Detective Harmon:] Yes.

. . . .

[Defense counsel:] And [the grand jury prosecutor] asked you this question: "Did you talk in terms of a specific weight?"
And your answer at that time was?

. . . .

[Detective Harmon:] "Well, we knew the deal was set to be an ounce."

[Defense counsel:] And you finished, you said, "So when I asked him if the weight was good," you were talking of an ounce. Right?

[Detective Harmon:] Yes.

[Defense counsel:] But you never responded, "Yeah, he did say an ounce"?

[Detective Harmon:] No, I just said that I knew the deal was set to be an ounce. So when I asked if the weight was good, I was talking of the ounce.

[Defense counsel:] Right. So, on the audiotape you didn't hear the word "ounce"?

[Detective Harmon:] No, sir.

[Defense counsel:] You are saying yourself on the stand today that the word "ounce" was never used, but that's what you were meaning. Is that right?

[Detective Harmon:] Yes, sir.

. . . .

[Defense counsel:] And [your discussion with Hambrick is] being broadcast over the transmitter also, but there's nothing to hear on there because it's so bad. Isn't that correct?

[Detective Harmon:] That is the recording.

[Defense counsel:] Yeah, the recording, yeah. It's so bad.

. . . .

[Defense counsel:] But even if it was good, you never said the word "ounce."

[Detective Harmon:] I don't recall saying the word "ounce."

. . . .

[Detective Harmon:] I don't recall saying an ounce. That's why I never testified that the word "ounce" was said.

5

On appeal, Hambrick focuses on Detective Harmon's testimony that he could not recall either himself or Hambrick actually saying the word "ounce" during the transaction and argues that Hambrick's assertion that the "weight was right" could not be the basis of a finding that he represented the drugs to be at least 28 grams. However, upon examination of the record, we conclude there was sufficient evidence presented upon which a jury could permissibly infer Hambrick represented the drugs as being an ounce by his uncontroverted statement that the "weight was right." In addition to testimony of Detective Bruner, that both Detective Harmon and Hambrick explicitly referred to the drugs as an ounce during the transaction (which the jury, as the trier of fact, was entitled to find credible), Detective Harmon also testified it was the accepted understanding between the informant, Hambrick, and Detective Harmon that the weight being sold was an ounce, thus, giving context to Hambrick's statement. Further providing context for the statement, Detective Bruner and Detective Harmon testified the police initially attempted to set up a controlled buy from Hambrick to purchase 1/2 ounce of cocaine, but Hambrick rejected any deal for less than an ounce. Officers then directed the informant to contact Hambrick again to set up the purchase of an ounce of cocaine and have Detective Harmon pose as the informant's friend who would contribute half the buy money in order to purchase an ounce. In addition, Detective Bruner testified the buy money given to Hambrick, $900, was consistent with the purchase of an ounce of cocaine in Boise; that, as with all powdered drugs, cocaine is purchased in increments of an ounce, a half-ounce, a quarter-ounce, or smaller units; and that to pay $900 for less than an ounce would be unusual. Thus, the fact Hambrick was paid $900 supports the inference that the "weight" to which he was referring was an ounce. Examined as a whole, we conclude there was substantial evidence upon which a reasonable trier of fact could have found the prosecution sustained its burden of proving the essential elements of the crime beyond a reasonable doubt--namely, that by stating the "weight was right," Hambrick "represented" the cocaine was at least 28 grams as required by the statute.

Hambrick also argues on appeal the evidence was insufficient to uphold his conviction on the alternate theory that the actual weight of the cocaine delivered was at least 28 grams because it only weighed 27.99 grams at the State laboratory. He also argues that even assuming we find there was sufficient evidence to convict him on one theory (as we found above), but not the other, we must nevertheless order a new trial. Because it is dispositive, we address the latter issue first.

Hambrick concedes his argument--that a new trial must be ordered even if sufficient evidence is found for one basis for a conviction if there was insufficient evidence to convict on the alternate basis--has previously been rejected by this Court in *State v. Enyeart*, 123 Idaho 452, 455-56, 849 P.2d 125, 128-29 (Ct. App. 1993), but asks for reconsideration of that decision here. In *Enyeart*, the defendant was charged with felony injury to a child after Enyeart took his young son to a concert and failed to supervise him, resulting in the son drowning in a pond on the site. On appeal, Enyeart argued the felony injury to a child jury instruction was erroneous because it allowed the jury to find him guilty either because he "willfully caused or permitted the person or health of [his son], a child, to be injured" *or* he "willfully caused or permitted [his son], a child, to be placed in such situation that its person or health was endangered." *Id*. at 455, 849 P.2d at 128. Enyeart argued no evidence was produced to show he actually caused or injured his son directly and, thus, the former alternative was erroneously given. This Court noted that even if we agreed with Enyeart, that the instruction was improper, the United States Supreme Court had addressed the issue of multiple alternative elements in a jury instruction, holding that although it would generally be preferable to give an instruction removing from the jury's consideration the alternative basis of liability that does not have adequate evidentiary support, refusal to do so did not provide an independent basis for reversing an otherwise valid conviction. *Id*. (citing *Griffin v. United States*, 502 U.S. 46, 60 (1991)). *Accord Turner v. United States*, 396 U.S. 398, 420 (1970) ("The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged."). We also noted Enyeart cited "no case in which a general verdict has been set aside because one of the possible bases of conviction was unsupported by sufficient evidence," and therefore, his assignment of error was without merit since there was sufficient evidence to support a conviction under the alternate theory. *Enyeart*, 123 Idaho at 456, 849 P.2d at 129.

More recently, we applied this rule in *State v. Cortez*, 135 Idaho 561, 21 P.3d 498 (Ct. App. 2001), where the defendant, charged with felony injury to a child, argued reversible error because the jury was instructed it could find Cortez guilty if it found either that he had willfully inflicted the child's injuries or willfully caused or permitted the child to suffer, and the State submitted no evidence in support of the latter. *Id*. at 564, 21 P.3d at 501. Upon noting the jury had rendered a general verdict, we indicated this Court previously held in *Enyeart* that a general

verdict is not reversible where one of the possible bases of conviction was unsupported by sufficient evidence and, therefore, the inquiry on appeal was whether there was sufficient evidence to uphold *any one* of the bases of conviction. *Cortez*, 135 Idaho at 564, 21 P.3d at 501 (citing *Enyeart,* 123 Idaho at 456, 849 P.2d at 129). We concluded the evidence was sufficient to find Cortez guilty under the theory that he willfully inflicted the child's injuries, and we concluded there was substantial and competent evidence to support the general jury verdict of guilty for felony injury to a child. *Id.*

On appeal, Hambrick asks us to overrule *Enyeart*, because he, unlike Enyeart, cites to several cases setting aside a general verdict on State law grounds where one of the possible bases of conviction was unsupported by sufficient evidence. *See State v. Jones*, 29 P.3d 351, 371 (Haw. 2001) (rejecting *Griffin* based on the State's due process clause); *Commonwealth v. Plunkett*, 664 N.E.2d 833, 837 (Mass. 1996) (rejecting the government's attempt to abandon the established rule in light of *Griffin* and noting that "[i]f the judge tells a jury that they may find the defendant guilty on a theory that is factually unsupported (in effect committing an error of law), the jurors understandably might believe that there must be evidence to support that theory"); *State v. Ortega-Martinez*, 881 P.2d 231, 235 (Wash. 1994) (rejecting *Griffin* on State constitutional grounds). *But see People v. Guiton*, 847 P.2d 45, 53 (Cal. 1993) (harmonizing *Griffin* rule with State law, holding that on appeal of a conviction by a jury that was presented with alternate legal theories of conviction, and where one of which is factually unsupported, the appellate court should affirm the judgment unless a review of the entire record affirmatively demonstrates a reasonable probability that the jury in fact found the defendant guilty solely on the unsupported theory); *Atwater v. State*, 626 So. 2d 1325, 1327 n.1 (Fla. 1993) (adopting *Griffin* with approval).

We decline to overturn *Enyeart* and *Cortez*. The rule of stare decisis dictates that we follow controlling precedent, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice. *Hughes v. State*, 148 Idaho 448, 462, 224 P.3d 515, 529 (Ct. App. 2009). While some state courts have deviated from *Griffin*, others have not, and Hambrick has not demonstrated *Enyeart* and *Cortez* are manifestly wrong under the Idaho Constitution. Thus, we decline Hambrick's invitation to deviate from the United States Supreme Court and overrule this precedent.

Accordingly, we need not address whether there was sufficient evidence to uphold the verdict on the theory of actual weight or whether there was error in admitting opinion testimony regarding how much cocaine was destroyed in performing the field test because where, as here, a jury renders a general verdict, that verdict is valid so long as there is sufficient evidence as to one of the submitted grounds. *Griffin*, 502 U.S. at 49; *Enyeart*, 123 Idaho at 455-56, 849 P.2d at 128-29. Since we have concluded there was sufficient evidence upon which a reasonable trier of fact could find Hambrick represented the requisite weight, Hambrick's sufficiency of the evidence argument is without merit.

**B.      Jury Instruction**

Hambrick contends the district court erred in refusing to instruct the jury on entrapment because he presented sufficient evidence to support such an instruction.[4] The question whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993).

Idaho Code § 19-2132 requires that a trial court instruct a jury on "all matters of law necessary for their information." When a jury instruction is requested by a party, it must be given if:

> (1) it properly states the governing law; (2) a reasonable view of at least some evidence would support the defendant's legal theory; (3) the subject of the requested instruction is not addressed adequately by other jury instructions; and

---

[4]     Specifically, Hambrick requested the jury be given Idaho Criminal Jury Instruction 1513, which provides, in relevant part:

> Law enforcement officials entrapped the defendant if three things occurred:
> 1.  The idea for committing the crime came from an agent of the state and not from the defendant.
> 2.  The state agent(s) then persuaded or talked the defendant into committing the crime. Merely giving the defendant an opportunity to commit the crime is not the same as persuading the defendant to commit the crime.
> 3.  The defendant was not ready and willing to commit the crime before the law enforcement officials spoke with the defendant.

(4) the requested instruction does not constitute an impermissible comment as to the evidence.

*State v. Edney*, 145 Idaho 694, 697, 183 P.3d 782, 785 (Ct. App. 2008).

A defendant cannot be convicted of a crime he was entrapped into committing. *State v. Canelo*, 129 Idaho 386, 391, 924 P.2d 1230, 1235 (Ct. App. 1996); *State v. Mata*, 106 Idaho 184, 186, 677 P.2d 497, 499 (Ct. App. 1984). The entrapment defense is a creature of common law, and it occurs when an otherwise innocent person, not inclined to commit a criminal offense, is induced to do so by a government agent who, desiring grounds for prosecution, originates the criminal design and implants in the mind of the innocent person the disposition to commit the alleged offense. *State v. Koller*, 122 Idaho 409, 411, 835 P.2d 644, 646 (1992); *State v. Ingram*, 138 Idaho 768, 773, 69 P.3d 188, 193 (Ct. App. 2003); *Canelo*, 129 Idaho at 391, 924 P.2d at 1235. There is a distinction between originating the idea for an offense and merely furnishing the opportunity to commit it. *Canelo*, 129 Idaho at 392, 924 P.2d at 1236. The latter is not entrapment; rather, it is a legitimate method of ferreting out crime. *Id*.

To prevail on appeal, Hambrick must show there is a reasonable view of the evidence presented that would support the theory of entrapment. Hambrick contends such evidence was presented as to each element of an entrapment defense. First, he points out he did not initiate contact with the confidential informant and it was Detective Bruner who originated the idea to commit the crime. As to the second element, he contends the fact the informant's initial attempt to arrange a drug buy of 1/2 ounce from Hambrick was unsuccessful and a second deal had to be set up supports an inference that an agent of the State talked him into committing the crime. Finally, he contends there was evidence he was not ready and willing to commit the crime before being approached by the confidential informant, including the fact the informant's first attempt to set up a deal had been unsuccessful, as well as Detective Harmon's testimony that after the three men were pulled over by an officer subsequent to leaving the drug store parking lot, Hambrick began to exhibit some "trepidation" and nervousness and went through with the deal after Detective Harmon and the confidential informant provided some reassurances.

We conclude, however, there is no evidence of undue influence, compulsion, or persuasion from the confidential informant to talk Hambrick into committing the crime. The informant merely presented Hambrick with an opportunity to violate the law, which he eventually took. Hambrick's argument, that the fact the initial attempt to set up a deal was

10

unsuccessful supports his contention that he was talked into participating in the drug deal, is not well-taken. The evidence presented at trial was that the initial attempt failed not because Hambrick expressed hesitancy to engage in illegal activity, but because he would only sell drugs in a *larger* amount. On this evidentiary record, Hambrick could not reasonably be found to be an "otherwise innocent person" not inclined to commit the offense. *See Ingram*, 138 Idaho at 773, 69 P.3d at 193 (holding the district court did not err in refusing to give an entrapment instruction where there was no evidence the undercover detective did more than simply present the defendant with the opportunity to sell drugs). Therefore, the trial court correctly refused the proposed instruction on entrapment.

## III.

## CONCLUSION

There was sufficient evidence that Hambrick represented the cocaine as weighing at least 28 grams to support Hambrick's conviction for trafficking in cocaine. Further, the district court did not err in denying Hambrick's request that the jury be instructed as to entrapment because there was no reasonable view of the evidence presented that would support the theory of entrapment. Hambrick's judgment of conviction for trafficking in cocaine is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**